Kenneth **HARRISON**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A04–0807–CR–423.

Court of Appeals of Indiana.

Feb. 26, 2009.

David A. Happe, Lockwood Williams & Happe, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Kenneth Harrison appeals his convictions for class A felony dealing in cocaine within 1000 feet of a public park and class B felony possession of cocaine within 1000 feet of a public park. We reverse in part, vacate in part, and remand with instructions.

### Issues

We address the following issues:

I. Whether the evidence is sufficient to support the enhancement of the felony level for both convictions;

II. Whether Harrison's convictions violate double jeopardy principles; and

III. Whether the prosecutor committed misconduct warranting reversal of Harrison's convictions.

### Facts and Procedural History

▆ The facts most favorable to the verdict show that on March 18, 2008, Indianapolis Police Officer Ethan McGivern participated in an undercover drug investi-

gation conducted in response to complaints that a woman named Kim was dealing crack cocaine near the Wheeler Mission, located on the 200 block of North Delaware Street in Indianapolis. At about 7:40 p.m., Officer McGivern, wearing an audio transmitter/recorder, jeans, a t-shirt, and a hooded sweatshirt, approached a group of men standing in the foyer of the Wheeler Mission and asked whether anyone had seen Kim. One of the men, later identified as Harrison, asked Officer McGivern why he wanted to see Kim. Officer McGivern answered that he wanted to see "if she out[,]" i.e., was she out selling drugs. Tr. at 38. Officer McGivern explained that he "was looking for a 20," that is, $20 worth of crack cocaine. *Id.* Harrison said that he could help Officer McGivern with that.

Officer McGivern and Harrison walked north to the 300 block of North Delaware Street. The night was rainy and windy. Officer McGivern gave Harrison $20 in exchange for two plastic bags of crack cocaine. The transaction occurred 703 feet from University Park, a public park, at approximately 8:05 p.m. Officer Jeffrey Sequin observed the transaction from an unmarked vehicle.

After buying the crack, Officer McGivern continued to walk north. He informed his backup via his transmitter that the deal was done and provided a description of the dealer: a black male with facial hair, black pants, black sweatshirt, and a blue or gray hat. In the meantime, Officer Sequin continued to watch Harrison, who was also walking northbound at somewhat of a distance behind Officer McGivern. Officer Sequin observed another black male walking northbound behind Harrison, and the man caught up with Harrison and began walking with him.

Two officers in an unmarked car pulled up beside the men. Harrison started to run away, and the other man lay down on the ground. The two officers got out of their car and yelled, "Stop, police!" *Id.* at 101, 103. Harrison continued to run, and one of the officers saw him throw a clear plastic baggie. Eventually, Harrison encountered another officer and surrendered. He was patted down, and police found marijuana and the marked bills Officer McGivern had used to purchase the crack cocaine. The other man was searched, and police found a pipe used to smoke crack cocaine. No cocaine was recovered from either man. At 8:10 p.m., Officer McGivern was driven past the men, and he identified Harrison as the individual who sold him the crack cocaine. Police also found an empty plastic bag in the area through which Harrison had run, but no cocaine or other narcotics were found inside.

The State initially charged Harrison with six counts but dismissed Counts I and II, leaving the remaining counts to go to trial: Count III, class A misdemeanor possession of marijuana; Count IV, class A misdemeanor resisting law enforcement; Count V, class A felony dealing in cocaine within 1000 feet of a public park; and Count VI, class B felony possession of cocaine within 1000 feet of a public park. Appellant's App. at 44, 83. A jury found Harrison guilty as charged. *Id.* at 79–82. The trial court sentenced Harrison to forty-five years in the Department of Correction. Harrison appeals his convictions for Count V, class A felony dealing in cocaine within 1000 feet of a public park, and Count VI, class B felony possession of cocaine within 1000 feet of a public park.

### Discussion and Decision

#### I. Sufficiency of the Evidence

Harrison asserts that the State failed to introduce sufficient evidence to sustain his convictions. We employ the following standard of review:

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007) (citations, quotation marks, brackets, and footnote omitted).

Harrison was convicted of class A felony dealing in cocaine within 1000 feet of a public park and class B felony possession of cocaine within 1000 feet of a public park. Dealing in cocaine is defined in Indiana Code Section 35–48–4–1(a), which provides in relevant part that a person who knowingly or intentionally delivers cocaine commits dealing in cocaine, a class B felony. However, the offense is a class A felony, as it is here, if the person delivered the drug in, on, or within 1000 feet of a public park. Ind.Code § 35–48–4–1(b)(3)(B).[1] Possession of cocaine has a similar enhancement. Indiana Code Section 35–48–4–6(a) provides in relevant part that a person who knowingly or intentionally possesses cocaine commits possession of cocaine, a class D felony. The offense is a class B felony if the person possesses less than three grams of cocaine in, on, or within 1000 feet of a public park. Ind.Code § 35–48–4–6(b)(2)(B).

Indiana Code Section 35–48–4–16 provides,

(a) For an offense under this chapter that requires proof of:

(1) delivery of cocaine, a narcotic drug, methamphetamine, or a controlled substance;

(2) financing the delivery of cocaine, a narcotic drug, methamphetamine, or a controlled substance; or

(3) possession of cocaine, narcotic drug, methamphetamine, or controlled substance; within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center, the person charged may assert the defense in subsection (b) or (c).

(b) It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:

(1) a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; *and*

(2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.

(Emphasis added.)

Specifically, Harrison asserts that the State's evidence was insufficient to disprove that he was briefly within 1000 feet of a public park, here University Park, and

---

1. The enhancement pursuant to Indiana Code Section 35–48–4–1(b)(3)(B) also includes school property, a family housing complex, or a youth program center.

that no persons under the age of eighteen were present.[2] As a threshold matter, we observe that the parties set forth in their briefs different burdens of proof, and therefore we must resolve which burden of proof is applicable.

■ The parties do agree that generally, a defendant bears the initial burden to prove any affirmative defense by a preponderance of evidence. *See Adkins v. State*, 887 N.E.2d 934, 938 (Ind.2008) ("A defendant bears an initial burden of proof by a preponderance of the evidence on any affirmative defense."). If the defendant meets this burden, the State is required to rebut the defense. *Wallace v. State*, 498 N.E.2d 961, 964 (Ind.1986). Harrison argues, however, that Indiana Code Section 35–48–4–16(b) actually contains mitigating factors that merely reduce, not excuse, a defendant's culpability, and that therefore the defendant has only the burden of placing the issue in question where the State's evidence has not done so. Our review of Indiana case law shows that we have not previously addressed this argument. Further, we note that, in its appellee's brief, the State did not respond to this argument. "An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief." *Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App.1999), *trans. Denied.* In such instances, the appellant will prevail if he establishes prima facie error, that is, "error that is evident at first sight, on first appearance, or on the face of it." *Atchley v. State*, 730 N.E.2d 758, 766 (Ind.Ct.App.2000), *trans. denied.* Thus, we avoid the improper burden of having to act as an advocate. *Gardner v. State*, 591 N.E.2d 592, 593 (Ind.Ct.App. 1992).

Harrison asserts that Section 35–48–4–16(b) is analogous to the defenses of sud-den heat, which reduces a defendant's culpability from murder to voluntary manslaughter, and an unloaded firearm, which reduces class D felony pointing a firearm pursuant to Indiana Code Section 35–47–4–3 to a class A misdemeanor. Recently, in *Adkins*, 887 N.E.2d at 934, our supreme court analyzed Indiana Code Section 35–47–4–3 and concluded that an unloaded firearm was a mitigating factor similar to sudden heat. We think *Adkins* supports Harrison's argument.

In *Adkins*, the State charged the defendant with class D felony pointing a firearm. Indiana Code Section 35–47–4–3 provides, "A person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded." At the conclusion of the trial, the jury was instructed that to find the defendant guilty of class A misdemeanor pointing a firearm, he had to prove by a preponderance of the evidence that the firearm was not loaded. *Adkins*, 887 N.E.2d at 936. Adkins objected to the instruction but was overruled. The jury found Adkins guilty as charged. The Court of Appeals affirmed. *Adkins v. State*, 870 N.E.2d 465 (Ind.Ct.App.2007), *trans. Granted.*

On transfer, Adkins contended that the instruction was erroneous because it placed the burden of proving that his gun was unloaded on him, rather than on the State. In reviewing Adkins's argument, our supreme court stated:

> Here, two respectable schools of thought have emerged in the opinions of the Court of Appeals. The first, enunciated by Judge Sullivan in his separate opinion in [*Brown v. State*, 790 N.E.2d 1061, 1066 (Ind.Ct.App.2003)] (Sullivan, J.,

**2.** We may safely assume that any persons under the age of eighteen were at least three years younger than Harrison as he was born in 1970.

concurring in part and dissenting in part), and followed by the trial court and the Court of Appeals in this case, *Adkins*, 870 N.E.2d at 472, is that the statute creates an "affirmative defense" with respect to which the defendant bears the burden of proof. This is also the approach followed by the Indiana Pattern Jury Instructions.

The second school of thought is that advanced by Judge Crone in his separate opinion in this case. Judge Crone took the position that it is not an affirmative defense to demonstrate that a firearm is unloaded. *Adkins, id.* at 473 (Crone, J., concurring in result). " 'An affirmative defense admits all the elements of the crime but proves circumstances which excuse the defendant from culpability.' " *Id.* (quoting *Melendez v. State*, 511 N.E.2d 454, 457 (Ind.1987)). Judge Crone maintained that a defendant who claims that his or her firearm was unloaded "is not attempting to negate an element of the crime, but rather to prove a mitigating factor that reduces, but not wholly excuses, his culpability." *Id.* (As we have seen, a loaded weapon is not an element of Class D Felony Pointing a Firearm.)

Judge Crone analogized the role that the unloaded firearm plays to that which "sudden heat" plays in prosecutions for murder. *Id.* "Sudden heat" is not an affirmative defense in such a case (because it does not negate an element of the crime of murder) but a mitigating factor that reduces the defendant's culpability from murder to voluntary manslaughter. *Id.* (citing *Boone v. State*, 728 N.E.2d 135, 138 (Ind.2000)). We agree with Judge Crone that the fact that a gun is unloaded is a mitigating factor that reduces a defendant's culpability from a felony to a misdemeanor, not an affirmative defense.

A defendant bears an initial burden of proof by a preponderance of the evidence on any affirmative defense. But the defendant bears no burden of proof with respect to the mitigating factor of sudden heat, only the burden of placing the issue in question where the State's evidence has not done so. The State then assumes the burden of disproving the existence of sudden heat beyond a reasonable doubt. We hold the same rule applies with respect to Class A Misdemeanor Pointing a Firearm. That is, if a defendant charged with Class D Felony Pointing a Firearm seeks instead to be convicted of Class A Misdemeanor Pointing a Firearm, the defendant must place the fact of the gun having been unloaded at issue if the State's evidence has not done so. Once at issue, the State must then prove beyond a reasonable doubt that the firearm was loaded. 887 N.E.2d at 937–38 (some citations omitted).[3]

▪ Thus, in *Adkins*, our supreme court recognized that an unloaded firearm does not completely excuse the defendant from culpability, but only to reduce the level of the defendant's culpability. In other words, even if the firearm is unloaded, the defendant is still guilty of pointing a firearm, the base crime. Similarly, the statutory defense provided by Section 35–48–4–16(b) does not excuse a defendant from culpability.[4] It operates only to reduce the

---

**3.** The *Adkins* court nevertheless affirmed Adkins's conviction for class D felony pointing a firearm because there was no evidence to suggest that the firearm was unloaded and ample evidence that the gun was loaded, and

therefore, the jury instruction constituted harmless error. 887 N.E.2d at 938.

**4.** While we acknowledge that the statute refers to this provision as a defense, the actual effect is to operate as a mitigator. Pursuant

level of culpability when certain factors are present. Even if the factors are present, the defendant is still guilty of the base crime. Accordingly, we conclude that Indiana Code Section 35–48–4–16(b) constitutes a mitigating factor that reduces culpability, and therefore the defendant does not have the burden of proof but "only the burden of placing the issue in question where the State's evidence has not done so." *See Adkins,* 887 N.E.2d at 938. Once at issue, the State must rebut the defense by proving beyond a reasonable doubt either that the defendant was within 1000 feet of a public park more than "briefly" *or* persons under the age of eighteen at least three years junior to the defendant were within 1000 feet of the public park (because both factors are required to effectuate the mitigation). Ind. Code § 35–48–4–16(b).

Here, Harrison argues that the evidence placed in issue both the brief duration of his presence within 1000 feet of University Park and the absence of any persons under the age of eighteen within 1000 feet of the park at the time of the offenses. The record shows that the undercover operation began at approximately 7:40 p.m., with Officer McGivern approaching a group of men in the Wheeler Mission foyer. There is no evidence as to whether Wheeler Mission is within 1000 feet of University Park or how far the Mission is from that boundary. Officer McGivern had a conversation with the men, and he and Harrison began walking north. There is no evidence as to when Harrison entered within 1000 feet of University Park. The cocaine delivery occurred at approximately 8:05 p.m., and the undercover operation was concluded at 8:10 p.m., when Officer McGivern identified Harrison. Appellant's App. at 158, 160.

As to whether any persons under the age of eighteen were within 1000 feet of University Park, the record shows that it was a rainy, windy evening in mid-March. In fact, it was too rainy for the officers to use their video equipment. Tr. at 139–40. Also, between 7:40 p.m. and 8:10 p.m., it would have been rather dark because at that time of year the sun would have been setting. The temperature is unknown, but we may reasonably infer from the date, the wind and rain, and the fact that the men wore jackets and sweatshirts that it was not warm. Harrison's counsel recalled one of the State's witnesses, a police officer, and asked him whether he had driven by University Park at about 8:00 p.m., and the police officer answered affirmatively. *Id.* at 200–01. Defense counsel then asked the witness whether he had noticed any children in the park. The witness answered that he had not been paying attention. *Id.* at 201. In closing arguments, both parties made arguments to the jury regarding Section 35–48–4–16(b). *Id.* at 228–234. The defense offered to tender an instruction regarding the statutory mitigating factors, but the trial court had already included it in its final instructions. *Id.* at 202–03. We agree with Harrison that the evidence put the statutory mitigating factors contained in Section 35–48–4–16(b) at issue.

Therefore, the State assumed the burden of proving beyond a reasonable doubt either that Harrison was within 1000 feet for more than a brief time or that persons under the age of eighteen were within 1000 feet of University Park. We find that the State failed to carry its burden. The evidence shows that the undercover operation took only thirty minutes and began in front of the Wheeler Mission. Officer McGivern and Harrison walked to a place that was 703 feet from University Park,

to the reasoning in *Adkins,* the burden is upon the State.

but the evidence does not show how far the Wheeler Mission is from the point of the cocaine delivery or from University Park. The State asserts that the "jury was free to use its common sense and determine that if the area where the transaction took place was 703 feet away from University Park, just north of New York Street, where University Park is located, then the Wheeler Mission, which is two-thirds of a block south, and just south of New York Street, cannot be more than 1000 feet away from the park." Appellee's Br. at 9. Apparently, according to the State, if Wheeler Mission is within 1000 feet of University Park, Harrison was within 1000 feet of the park for the entire thirty minutes, which is not a "brief" presence. We need not precisely determine the duration of a "brief" period of time because we cannot agree that a reasonable jury would find that the evidence proved beyond a reasonable doubt that Wheeler Mission is within 1000 feet of University Park. The evidence merely shows that Officer McGivern and Harrison walked to a point 703 feet from the park, Harrison delivered the cocaine, and they walked away. From this, a fact-finder could reasonably infer that Harrison was briefly within 1000 feet of the park. There is no evidence to the contrary. We conclude that the State failed to prove that Harrison with within 1000 feet of University Park for more than a brief time.

As to whether persons under the age of eighteen were within 1000 feet of University Park, the record shows that it was a windy, rainy evening in mid-March and therefore highly unlikely that such persons were present. The State presented no evidence that any persons under the age of eighteen were present within 1000 feet of the University Park. Accordingly, we conclude that no reasonable fact-finder could find beyond a reasonable doubt either that Harrison was within 1000 feet of Universi-

ty Park more than briefly or that no persons under the age of eighteen were within 1000 feet of University Park. We therefore reverse Harrison's conviction for class A felony dealing in cocaine and remand with instructions to reduce the conviction to a class B felony and resentence him on this count. Based on the double jeopardy principles we discuss in the next section, we also remand to vacate Harrison's conviction for possession of cocaine, which would otherwise be reduced to a class D felony.

## II. Double Jeopardy

We next address sua sponte whether Harrison's conviction for possession of cocaine is barred by double jeopardy. *See, e.g., Smith v. State,* 881 N.E.2d 1040, 1047 (Ind.Ct.App.2008) ("We raise this issue sua sponte because a double jeopardy violation, if shown, implicates fundamental rights."). Here, the same cocaine was used to support Harrison's dealing and possession convictions. The only cocaine introduced into evidence was the cocaine found in the baggies Harrison delivered to Officer McGivern. No other cocaine was found on Harrison's person or in the baggie he threw while attempting to resist arrest. Our supreme court has concluded that where the same cocaine supports both possession of cocaine pursuant to Indiana Code Section 35–48–4–6 and dealing in cocaine pursuant to Indiana Code Section 35–48–4–1, possession of cocaine is a lesser included offense of dealing in cocaine. *Hardister v. State,* 849 N.E.2d ·563, 575 (Ind.2006); *see also Mason v. State,* 532 N.E.2d 1169, 1172 (Ind.1989) ("Possession of a narcotic drug is an inherently included lesser offense of dealing in a narcotic drug, inasmuch as it is impossible to commit the greater offense without committing the lesser offense."). " 'Where the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate

conviction and sentencing on the lesser crime when sentencing is imposed on the greater one.' " *Mason*, 532 N.E.2d at 1172 (*quoting Boze v. State*, 514 N.E.2d 275, 277 (Ind.1987)). Thus, Harrison may not be convicted and sentenced on both the greater and lesser offenses.[5] Accordingly, we vacate Harrison's conviction for possession of cocaine.

### III. Prosecutorial Misconduct

■ During trial, Harrison testified that Gina and Danny White gave him a ride downtown so that he could purchase marijuana from a man named Kevin. Tr. at 176–77, 191. Apparently, this was part of Harrison's defense that he went downtown only to buy marijuana and that the man who walked down the street with him must have sold Officer McGivern the crack cocaine. In closing argument, the prosecutor stated,

> And one final thing that I want to talk about is the Whites, the Whites who drove [Harrison] downtown, think about their testimony today. Think about everything they told you, that the two people who could corroborate his story, think about everything they told—Oh wait, they weren't here.

*Id.* at 225–26. Defense counsel objected on the ground that this argument shifted the burden of proof to the defendant. The trial court overruled the objection, stating, "It's a fair comment on your client's testimony." *Id.* at 226. The prosecutor then stated, "They could have been here and they're not. Just something to think about." *Id.*

■ Harrison claims that the prosecutor's comments constitute misconduct. When reviewing a claim of prosecutorial misconduct, we must first consider wheth-er the prosecutor engaged in misconduct. *Williams v. State*, 724 N.E.2d 1070, 1080 (Ind.2000). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind.2006). Also, in judging the propriety of the prosecutor's remarks, we consider the statement in the context of the argument as whole. *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind. Ct.App.1999). If we determine that misconduct occurred, we then consider whether the alleged misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Reynolds v. State*, 797 N.E.2d 864, 868 (Ind.Ct.App.2003). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of impropriety of the conduct. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002).

■■ It is not improper for the prosecutor in closing argument to focus on the uncontradicted nature of the State's case. *Isaacs v. State*, 673 N.E.2d 757, 764 (Ind. 1996). However, it is improper for the prosecutor to suggest that the defendant has the burden of proof by inquiring in closing argument why the defendant did not call a witness to testify on his behalf. *Chubb v. State*, 640 N.E.2d 44, 48 (Ind. 1994). In the case at bar, the prosecutor called attention to the fact that Harrison did not call certain witnesses who could corroborate his story. This suggested that Harrison had the burden to prove that his version of events was true. Accordingly, we conclude that the prosecutor's comments were improper.

---

**5.** In addition, Indiana Code Section 35–38–1–6 provides that where a defendant is found guilty of both a greater and lesser included offense, judgment and sentence may not be entered on the lesser included offense.

We next address whether the prosecutor's comment subjected Harrison to grave peril. We note that the trial court preliminarily instructed the jury that the defendant is presumed innocent until proven guilty beyond a reasonable doubt and that the defendant is not required to present any evidence to prove his innocence. Appellant's App. at 46, 48, 60, 61. The final instructions referred to the preliminary instructions and reminded the jury that the State had the burden of proving the defendant guilty beyond a reasonable doubt. *Id.* at 66, 68. Also, the evidence that Harrison delivered cocaine to Officer McGivern was overwhelming and was supported by Officer McGivern's and Officer Sequin's eyewitness testimony. We conclude that in light of the jury instructions and the weight of the evidence, the probable persuasive effect of the prosecutor's improper comment was negligible. As such, reversal of Harrison's conviction is unwarranted. *See Wright v. State,* 690 N.E.2d 1098, 1112 (Ind.1998) (concluding that defendant was not placed in grave peril given proper jury instructions and weight of evidence).

### Conclusion

We reverse Harrison's conviction of class A felony dealing in cocaine and remand with instructions to enter judgment of conviction for class B felony dealing in cocaine and for resentencing. We vacate Harrison's judgment of conviction for possession of cocaine based on double jeopardy principles.[6]

Reversed in part, vacated in part, and remanded.

ROBB, J., and BROWN, J., concur.

---

6. The dealing in cocaine charge appeared as Count V on the charging information and the jury verdict form. Appellant's App. at 39, 81. However, the judgment of conviction erroneously lists Count V as class D felony possession of marijuana, citing Indiana Code Section 35–48–4–11. Harrison was not found guilty of this offense. Therefore, on remand, we instruct the trial court to correct the offense listed as Count V to dealing in cocaine as a class B felony pursuant to Indiana Code Section 35–48–4–1. Part 2 of the judgment of conviction must also be corrected to show Harrison's sentence for class B felony dealing in cocaine as Count V. Count VI, possession of cocaine as a class B felony, must be vacated. Counts III and IV are correctly listed in the judgment of conviction.