# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 18 2013, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN F. HARRIS, III, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1205-CR-210 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Terry C. Shewmaker, Acting Judge
Cause No. 20D03-1010-FB-31

**January 18, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

John F. Harris, III, was convicted of possession of cocaine, which was enhanced to a class B felony because the offense occurred within 1000 feet of a family housing complex. Harris was also found to be a habitual offender based on prior convictions of escape and possession of cocaine with intent to deliver.

On appeal, Harris argues that a statutory defense to the class B felony enhancement applies because he was present in the proscribed zone for only a brief period of time and no children were present. Although no children were seen at the time of the offense, there was proof that children were residing in the immediate vicinity. We conclude that, pursuant to supreme court precedent, this evidence was sufficient to prove that children were present and therefore the defense was rebutted.

As to the habitual offender enhancement, Harris argues that he falls within a provision that precludes application of the enhancement to certain offenders who do not have more than one dealing offense. We agree that the State has failed to prove that Harris has more than one dealing offense, and we therefore reverse the habitual offender enhancement.

**Facts and Procedural History**

Around 2:00 a.m. on October 1, 2010, Officer James Wrathell saw Harris walking "down the middle of Madison Street" in Elkhart. Tr. at 55. Officer Wrathell decided to stop Harris because walking in the middle of the roadway is "a violation of state statute" and also because the police department receives "a lot of calls in that area for kids, adults being in the

2

road and causing problems with the flow of traffic, particularly coming in and out of apartments." *Id*.

Officer Wrathell first observed Harris just north of Middlebury Street walking toward River Run Apartments ("River Run"), which consists of six buildings adjacent to Madison and Middlebury Streets. Officer Wrathell stopped his car and approached Harris. Officer Wrathell asked Harris for identification, and Harris stated that he did not have it with him. Harris seemed nervous, and Officer Wrathell ordered him to put his hands on his head. Instead, Harris fled into one of the apartment buildings. Officer Wrathell followed Harris inside and managed to subdue Harris in the hallway.

Officer Wrathell searched Harris and found about $680 in cash, several bags of marijuana, and a bag of individually-packaged rocks of cocaine. As a result, Harris was charged with possession of cocaine within 1000 feet of a family housing complex, a class B felony, and with being a habitual offender.

Harris was tried to the bench on February 14, 2012. Officer Wrathell testified to the foregoing facts. He also testified that he observed Harris for ten to fifteen seconds before attempting to stop him. He stated that Harris "was the only one around" when he observed him walking in the roadway, *id*. at 55, and that no one else was present in the hallway where he caught up to Harris. Officer Wrathell stated that he did not observe any children during the incident.

The State also presented testimony of Barbara Woodcox, River Run's community manager, and Curt Curtis, River Run's maintenance supervisor. Woodcox testified that she

3

began working at River Run in June 2011. She stated that River Run has 120 units, which are government-subsidized. She indicated that about ninety percent of the units are occupied by single mothers with children. By reviewing records, Woodcox was able to estimate that 104 children were living in River Run at the time of Harris's offense. However, because she did not work at River Run at that time, she could not testify as to whether any children were present when Harris committed the offense.

Curtis confirmed that most of the units are occupied by "younger women with children," *id*. at 44, and that there are always "lots" of children living in River Run. *Id*. at 45. Curtis's duties sometimes require him to be present at night. When asked if it is common to see children present at night, Curtis said, "Yeah, typically, but not many. I mean, you know, usually they're with their parents at that time." *Id*. at 47. Curtis could not recall whether he was present at River Run in the early morning hours of October 1, 2010; therefore, he also could not testify as to whether any children were present when Harris committed the offense.

At the conclusion of the trial, the court took the case under advisement. On March 6, 2012, the court issued an order finding Harris guilty of possessing cocaine as a class B felony and finding him to be a habitual offender. On April 5, 2012, Harris was sentenced to an aggregate term of forty-three years. Harris now appeals.

**Discussion and Decision**

Harris raises two issues, which we restate as: (1) whether the State presented sufficient evidence to rebut Harris's defense to the class B felony enhancement of his

conviction for possessing cocaine; and (2) whether there was sufficient evidence to support the habitual offender finding.

When reviewing the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the evidence supporting the judgment and the reasonable inferences to be drawn therefrom. *Id*. We will affirm if a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id*.

## *I. Class B Felony Enhancement*

Possession of cocaine is a class D felony, but may be a greater-level offense if additional facts are proven. Ind. Code § 35-48-4-6. In this case, the State charged Harris with a class B felony because he possessed cocaine within 1000 feet of a family housing complex.[1] Ind. Code § 35-48-4-6(b)(2)(B)(iii). A defense to this enhancement is provided by Indiana Code Section 35-48-4-16(b):

> It is a defense for a person charged under this chapter with an offense that contains an element listed in subsection (a) that:
>
> > (1) a person was briefly in, on, or within one thousand (1,000) feet of school property, a public park, a family housing complex, or a youth program center; and
> >
> > (2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the school property, public park, family housing complex, or youth program center at the time of the offense.

---

[1] "Family housing complex" is defined by Indiana Code Section 35-31.5-2-127. Harris does not dispute that River Run qualifies as a family housing complex.

5

The defendant has the burden "of placing the issue in question where the State's evidence has not done so." *Griffin v. State*, 925 N.E.2d 344, 347 (Ind. 2010) (quoting *Harrison v. State*, 901 N.E.2d 635, 642 (Ind. Ct. App. 2009), *trans. denied*).

> Once at issue, the State must rebut the defense by proving beyond a reasonable doubt either that the defendant was within 1000 feet of a public park more than "briefly" *or* persons under the age of eighteen or at least three years junior to the defendant were within 1000 feet of the [family housing complex] (because both factors are required to effectuate the mitigation).

*Id.*

In *Griffin*, the defendant was convicted of possessing cocaine within 1000 feet of a school property. The only witness was a police officer who said that he saw Griffin pushing a moped down a street at 2:15 a.m. After observing him for about five minutes, the officer stopped him because he suspected that the moped might be stolen. During the stop, which happened to be near a school, the officer found a bag of cocaine. The officer testified that he did not see any children on or near the school property. The officer also testified that the stop occurred in a residential neighborhood. When asked if he knew whether there were any families with children in the area, he answered, "Probably." *Id*. at 348.

Our supreme court held that the officer's testimony that he did not see any children in the area was sufficient to place the issue of the presence of children into question. *Id*. The court further concluded that the evidence that the stop occurred in a residential neighborhood, without any evidence of whether children actually lived there, was not sufficient to rebut the absence-of-children prong of the defense. *Id*. The court noted that there "was no evidence as to the location of the residential homes along the street so as to place them, or any inferred

6

child occupants, within 1,000 feet of the school." *Id*. In a footnote, the court noted that there was no evidence that the offense occurred within 1000 feet of a family housing complex. *Id*. at n.6.

As in *Griffin*, the officer in this case testified that he did not see any children in the area where Harris was walking or in the building where he finally subdued Harris. However, unlike *Griffin*, in this case, there was evidence that over 100 children were living in the immediate vicinity. We feel bound to interpret our supreme court's statements in *Griffin* to indicate that this evidence is sufficient to establish that children were present. Because the State need only rebut one prong of the defense, we must conclude that there is sufficient evidence to support the class B felony enhancement.

We acknowledge that this interpretation of the defense seems inconsistent with its purpose, which is "to excuse a defendant from the required enhancement when his presence in the proscribed zone only minimally increases the risk to children." *Id*. at 349. If the defense can be defeated merely because unseen children are present in a nearby residence, the enhancement becomes similar to a strict liability offense. The enhancement loses some of its value as a deterrent if it applies to offenders who are unaware that a child happens to be present in a nearby residence. Although the statutory defense as written is clearly available for persons charged with possession or dealing within 1000 feet of a family housing complex, as a practical matter, the defense will likely be difficult to establish. Nevertheless, *Griffin* is binding precedent, and we therefore affirm the class B felony conviction.

7

## *II. Habitual Offender*

Indiana Code Section 35-50-2-8 provides, in relevant part:

(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

(1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction;

(2) the offense is an offense under IC 9-30-10-16 or IC 9-30-10-17; or

(3) all of the following apply:

(A) The offense is an offense under IC 16-42-19 or IC 35-48-4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16-42-19-27;

(ii) dealing in cocaine or a narcotic drug (IC 35-48-4-1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35-48-4-2);

(iv) dealing in a schedule IV controlled substance (IC 35-48-4-3; and

(v) dealing in a schedule V controlled substance (IC 35-48-4-4);

does not exceed one (1).

8

Harris argues that his circumstances fit paragraph (b)(3) and the State therefore failed to prove that he is a habitual offender. The State does not dispute that subparagraphs (b)(3)(A) and -(B) are met. Harris's current offense, possession of cocaine, does not fall within subparagraph (b)(3)(C). The two predicate offenses listed in the habitual offender charge are as follows:

> On or about the 17[th] day of August 1997, in the County of Kenosha, State of Wisconsin, one JOHN F. HARRIS, III committed the offense of Escape, a Felony, and was convicted and sentenced of said offense on or about the 30[th] day of October, 1997, in the Kenosha Circuit Court, Cause No. 97-CF-353, Kenosha County.

> On or about the 3[rd] day of May, 2002, in the County of Elkhart, State of Indiana, one JOHN F. HARRIS, III committed the offense of Possession of Cocaine or a Narcotic Drug, an offense in which the possession of drugs is a material element, and was convicted and sentenced of said offense on or about the 27[th] day of May 2003, in the Elkhart Superior Court No. 2, Cause No. 20D02-0205-FA-38, Elkhart County, Indiana….

Appellant's App. at 32. Clearly, the escape conviction does not fall within subparagraph (b)(3)(C). However, the State argues that the evidence submitted at trial supports a conclusion that Harris's 2003 conviction of possession of cocaine or a narcotic drug was pursuant to Indiana Code Section 35-48-4-1.

The charging information from that case reflects that Harris was initially charged with possession of cocaine in excess of three grams with intent to deliver, a class A felony pursuant to Indiana Code Section 35-48-4-1. That section provides, in relevant part:

> (a) A person who:
>
> …
>
> (2) possesses, with intent to:

9

…

     (C) deliver…

cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in cocaine or a narcotic drug, a Class B felony, except as provided in subsection (b).

     (b) The offense is a Class A felony if:

     (1) the amount of the drug involved weighs three (3) grams or more….

Ind. Code § 35-48-4-1.

An order dated April 21, 2003, indicates that Harris intended to plead guilty to the "lesser included offense of possession of cocaine with intent to deliver, B felony" pursuant to a plea agreement. State's Ex. 8. The sentencing order dated May 27, 2003, states that Harris was found guilty of "POSSESSION OF COCAINE OR NARCOTIC DRUG B FELONY WITH INTENT TO DELIVER." *Id*. Harris notes that the abstract of judgment states that he was convicted of "POSSESSION OF COCAINE OR NARCOTIC DRUG B FELONY 35-48-4-6." However, the remainder of the documentation reflects that Harris was charged and convicted pursuant to Indiana Code Section 35-48-4-1. Because we must consider the evidence favorable to the judgment, we must conclude that the 2003 possession conviction is an offense listed in Indiana Code Section 35-50-2-8(b)(3)(C).

The State argues that in order to establish that Harris has more than one conviction that falls under Indiana Code Section 35-50-2-8(b)(3)(C), it may rely on any additional conviction even if it was not one of the convictions identified in the habitual offender charge. In support, the State relies on *Peoples v. State*, 929 N.E.2d 750 (Ind. 2010). In that case, the

defendant had prior convictions of dealing in cocaine and forgery, and his current offense was dealing in cocaine. The defendant argued that he was not a habitual offender because he did not have two *prior* unrelated dealing convictions. Our supreme court held that the current offense counted and the defendant therefore qualified as a habitual offender. *Id.* at 753. Even assuming that the holding of *Peoples* can properly be expanded to include additional offenses other than the current offense and the predicate offenses, the State has failed to prove that Harris has another conviction that falls under Indiana Code Section 35-50-2-8(b)(3)(C).

The State relies on a document titled "Bail Review Pretrial Release Report" which indicates that Harris has a 1997 conviction of "Manufacture/Delivery of a Controlled Substance" from Illinois. State's Ex. 11. The record is silent as to which drug Harris manufactured; therefore, we cannot determine which offense in Indiana is analogous to the Illinois conviction. Not all of Indiana's manufacturing offenses fall within the sections identified in Indiana Code Section 35-50-2-8(b)(3)(C).[2] The State has failed to prove that Harris has more than one conviction falling under Indiana Code Section 35-50-2-8(b)(3)(C). All the conditions of subparagraph (b)(3) are met; therefore, Harris is not a habitual offender, and we reverse the enhancement.

Affirmed in part and reversed in part.

MAY, J., and BROWN, J., concur.

---

[2] Most notably, manufacturing methamphetamine, which is prohibited by Indiana Code Section 35-48-4-1.1, is not on the list. In 2006, methamphetamine was removed from the section dealing with cocaine and placed in its own section. The habitual offender statute has not been amended since 2005.