
FILED
Sep 20 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOHN B. NORRIS**
Hass Vandivier & Norris
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LINDA M. NEESE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1303-CR-138 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Lance D. Hamner, Judge
Cause No. 41D03-1208-CM-1567

**September 20, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Linda M. Neese appeals her conviction for one count of class A misdemeanor check deception. Neese asserts that the State presented insufficient evidence to support her conviction. Neese also asserts that the State presented insufficient evidence to rebut her statutory affirmative defense beyond a reasonable doubt. Finding the evidence sufficient to support the conviction and that Neese failed to meet her initial burden to establish her affirmative defense by a preponderance of the evidence, we affirm.

**Facts and Procedural History**

The facts most favorable to the conviction indicate that Neese and Thomas Reed had known each other for a long time and had even lived together for approximately fourteen or fifteen years at some point. On January 6, 2011, Neese wrote Reed a personal check, dated that same date, in the amount of $2500. Neese issued the check to Reed in exchange for Reed giving Neese $2500 cash in order to bail her son out of jail. Reed assumed that Neese did not have the money in her account to cover the check because otherwise, she would have just gone to the bank and gotten the money herself. Neese told Reed that she would have the money by April 15, 2011, because her son's girlfriend would get a tax refund and give Neese the money to put in her account.

On February 25, 2011, Reed took the check to the bank and attempted to cash it. The bank rejected the check because Neese's account was closed. Reed immediately contacted the local prosecutor's office. On March 25, 2011, Rebecca Garland, the check deception coordinator for the Johnson County Prosecutor's Office, sent a notice to Neese informing her

2

regarding the unpaid check, the crime of check deception, and Neese's ability to avoid prosecution by paying the amount owed plus fees within ten days of the notice. Neese contacted Garland within ten days and tried to make arrangements to pay the check. However, Neese failed to make any payment, claiming that she did not have the money to do so. To date, Neese has never repaid Reed.

On August 30, 2012, the State charged Neese with class A misdemeanor check deception. A bench trial was held on February 28, 2013. At the close of the State's evidence, Neese moved for a directed verdict arguing that the State failed to meet its burden of proof because, pursuant to Indiana Code Section 35-43-5-5(f), she did not commit the crime of check deception because Reed knew that she did not have sufficient funds in her account to cover the check. The State responded that subsection (f) of the check deception statute operates as an affirmative defense and not an element of the offense, and therefore a directed verdict was inappropriate. The trial court denied Neese's motion for directed verdict and proceeded with the trial. In presenting her case in defense, Neese did not testify but only recalled Reed to the witness stand. Reed testified that, at the time Neese gave him the check, he knew that Neese did not have sufficient funds to cover the check. Thereafter, the trial court found Neese guilty as charged. Additional facts will be provided as necessary.

**Discussion and Decision**

We first address Neese's challenge to the sufficiency of the State's evidence to sustain her conviction. When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn*

*v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn therefrom that support the finding of guilt. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We likewise consider conflicting inferences in the light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

To establish that Neese committed class A misdemeanor check deception, the State was required to prove that she "knowingly or intentionally issue[d] or deliver[ed] a check, draft, or an order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business[.]" Ind. Code § 35-43-5-5(a). Indiana Code Section 35-43-5-5(c) specifically provides that "[t]he fact that a person issued or delivered a check, a draft, or an order, payment of which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid or honored." Additionally, "evidence that a person had insufficient funds in or no account with a drawee credit institution constitutes prima facie evidence that the person knew that the check, draft, or order would not be paid or honored." *Id.*

The uncontroverted evidence establishes that Neese wrote a personal check to Reed, dated January 6, 2011, in the amount of $2500. Neese gave the check to Reed in exchange for $2500 in cash. When Reed subsequently presented the check to the bank for payment on February 25, 2011, payment was refused by the bank because Neese's account was closed. Contrary to Neese's arguments, this evidence alone is sufficient to support a reasonable

4

inference that Neese acted with the requisite intent to commit check deception. A person engages in conduct knowingly if, while engaging in the conduct, she is aware of a high probability that she is engaging in such conduct. Ind. Code § 35-41-2-2. The trier of fact here could reasonably infer from the evidence that, when issuing the check to Reed, Neese was aware of a high probability that she was issuing a bad check. Indeed, as noted above, the mere fact that Neese issued a check, payment of which was refused by the drawee bank constitutes prima facie evidence that Neese knew the check would not be honored upon presentment. *See* Ind. Code § 35-43-5-5(c); *see also Cooper v. State*, 181 Ind. App. 275, 278-79, 391 N.E.2d 841, 843-44 (1979) (discussing prior version of check deception statute and statutory inference of knowledge). Accordingly, the State presented sufficient evidence to establish that Neese knowingly issued a check for the payment of money knowing that it would not be paid or honored upon presentment in the usual course of business.

Having concluded that the State presented sufficient evidence to sustain Neese's conviction, we now turn to Neese's purported affirmative defense. Specifically, our legislature has provided that a person does not commit a crime under subsection (a) of the check deception statute when "the payee or holder knows that the person has insufficient funds to ensure payment or that the check, draft, or order is postdated." Ind. Code § 35-43-5-5(f). In determining whether a statutory exception, such as the one provided here, constitutes a material element of the offense or an affirmative defense to the crime, our courts assess the location of the exception relative to the location of the definition of the principal offense. *Lyles v. State*, 970 N.E.2d 140, 143 n.3 (Ind. 2012). "If the exception is closely connected

5

with the clause creating the offense, the exception is a material element of that offense and must be proven by the State." *Id.* If, however, the "exception is contained in a subsequent clause or statute, the exception is an affirmative defense and must be raised by the defendant." *Id.* Here, the knowledge of the payee exception is contained in a clause subsequent to the definition of the principal offense. Therefore, although not specifically designated as such, we agree with the parties that the exception listed in subsection (f) should be properly considered an affirmative defense to the crime of check deception. *See Gunashekar v. Grose*, 915 N.E.2d 953, 956-57 (Ind. 2009) (referring to same subsection under prior version of the statute as a "defense" to the crime of check deception).[1]

---

[1] As noted by the State, this Court has issued some conflicting holdings in the civil context as to whether subsection (f) constitutes an element of the offense of check deception or an affirmative defense. *Compare Parrish v. Anne Selig Marek, P.C.*, 537 N.E.2d 39, 42 (Ind. Ct. App. 1989) (referring to subsection (f) as a legal defense to the criminal act of check deception), *trans. denied, with Lemert Eng'g Co., v. Monroe Auto Equip. Co.,* 444 N.E.2d 859, 862 (Ind. Ct. App. 1983) (concluding that subsection (f) states an element of the offense rather than an affirmative defense). However, in light of our supreme court's recent explanation of statutory exceptions in *Lyles* as well as the court's reference to subsection (f) as a defense in *Gunashekar*, subsection (f) should be considered an affirmative defense.

A defendant bears the initial burden to prove any affirmative defense by a preponderance of the evidence. *Harrison v. State*, 901 N.E.2d 635, 640 (Ind. Ct. App. 2009), *trans. denied.* If the defendant meets this initial burden, the State is then required to rebut the defense. *Id.*[2] Here, in finding her guilty of the crime of check deception, the trial court concluded that Neese failed to meet her burden of proof on her affirmative defense. Consequently, Neese appeals from a negative judgment. A party appealing from a negative judgment must demonstrate that the evidence points unerringly to a conclusion different than that reached by the trial court. *Newson v. State*, 785 N.E.2d 1155, 1157-58 (Ind. Ct. App. 2003). We will reverse a negative judgment only if the decision of the trial court is contrary to law. *Id.* That is to say, we must determine if the undisputed evidence and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. *Id.*

Viewing the facts in the proper light of appellate review, we agree with the trial court that Neese failed to meet her initial burden to prove her affirmative defense by a preponderance of the evidence. Subsection (f) of the check deception statute excuses

---

[2] Neese erroneously asserts that her only burden was to place her statutory affirmative defense "at issue" before the burden shifted to the State to then rebut her defense beyond a reasonable doubt. Appellant's Br. at 19, 24. However, there is a difference between an affirmative defense that negates an element of the crime and a factor in mitigation of culpability that is separate and distinct from the elements of the crime. A defendant bears no burden of proof with respect to a mitigating factor, only the burden of placing the issue in question where the State's evidence has not done so. *Abbott v. State*, 961 N.E.2d 1016, 1018 (Ind. 2012) (citing *Harrison*, 901 N.E.2d at 642)). Here, subsection (f) of the check deception statute serves as an affirmative defense to the crime of check deception rather than a mitigating factor in that it wholly excuses culpability rather than merely reducing culpability. *See*, *e.g*, *Harrison*, 901 N.E.2d at 641-42 (fact that a gun is unloaded is a mitigating factor in pointing a firearm prosecution similar to mitigating factor of sudden heat in murder prosecution because fact reduces, but does not wholly excuse, culpability). Therefore, Neese bore the initial burden of proving her affirmative defense by a preponderance of the evidence.

7

culpability of the person delivering or issuing a bad check if the payee or holder knows that the person has insufficient funds to ensure payment or that the check was postdated. In essence, our legislature has decided that the crime of check deception does not occur when the payor can establish shared knowledge between payor and payee, namely that the payor has shared a particular knowledge with the payee that the check will not be paid upon presentment in the usual course of business due to insufficient funds or postdating. In accepting the check under those circumstances, the payee has not been misled, deceived, or defrauded. At trial here, testimony was elicited from Reed, the payee of the check, which indicated that at the time Neese issued the check, she informed Reed that she did not have sufficient funds in her account to ensure payment. Reed testified that he assumed that if Neese had the money, "she'd went down and cashed it herself. Got the money out of the bank herself." Tr. at 6. Reed stated that Neese told him she would have sufficient funds by "tax season" or around April 15, 2011. *Id.* This evidence indicates that Reed believed that if he tried to cash the check prior to April 15, 2011, the check would be denied for insufficient funds.

However, the inquiry does not end there. We believe that our legislature intended that, in order for the affirmative defense in subsection (f) of the check deception statute to apply, the knowledge shared by the payor with the payee, i.e., insufficient funds to ensure payment, must match the reason that the check is not honored by the bank upon presentment, hence excusing culpability of the payor because the payor shared that particular knowledge with the payee. When Reed went to cash Neese's check on February 25, 2011, the bank did

8

not refuse to negotiate the check due to insufficient funds as Reed could have expected based upon the knowledge that Neese shared with him. Rather, the bank refused to negotiate the check because Neese's bank account was closed. It was reasonable for the trier of fact to infer from those facts that Neese knowingly issued a check to Reed written on a closed account, knowing that it would never be honored by the bank no matter when presented. Neese has failed to show that she shared knowledge with Reed such that he was not, in fact, misled, deceived, or defrauded by her when she issued the check. Where, as here, the payor cannot establish by a preponderance of the evidence that the payee knows that the payor has insufficient funds to ensure payment of the check *and* that the check was not honored upon presentment for that reason, the affirmative defense has not been proven. The trial court properly concluded that Neese failed to meet her burden to prove her affirmative defense, and we cannot say that the evidence points unerringly to a different conclusion.

In sum, the State presented sufficient evidence to prove that Neese knowingly or intentionally issued a check to Reed knowing that it would not be paid or honored by the bank upon presentment in the usual course of business. Moreover, Neese failed to meet her burden to prove her affirmative defense by a preponderance of the evidence. We therefore affirm her conviction for class A misdemeanor check deception.

Affirmed.

BARNES, J., and PYLE, J., concur.

9