## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 21 2017, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey A. Rader,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 21, 2017<br><br>Court of Appeals Case No.<br>79A05-1608-CR-1877<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Thomas H. Busch,<br>Judge<br><br>The Honorable Donald L. Daniel,<br>Senior Judge<br><br>Trial Court Cause No.<br>79C01-1511-F2-3 |

**Altice, Judge.**

## Case Summary

[1] Jeffrey Rader appeals following his convictions for Level 4 felony possession of cocaine and Level 2 felony dealing in cocaine and his adjudication as a habitual offender. Rader raises the following issues for our review:

> 1. Did the State present sufficient evidence to support his dealing in cocaine conviction?
>
> 2. Should this case be remanded for correction and clarification of the sentencing order?

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts & Procedural History

[3] On November 18, 2015, police went to the La Quinta Inn in Lafayette to investigate a report that individuals with warrants were staying there. When Sergeant Adam Malady and Officer Jason Walters of the Lafayette Police Department arrived, hotel management also reported an odor of marijuana emanating from room 307. The officers knocked on the door of room 307 and a man opened the door. When the officers entered, they found three individuals in the living room portion of the suite. Additionally, Rader and a woman were found asleep on the bed in the bedroom portion of the suite. There was also a grocery bag on the bed, on which police found 2.76 grams of synthetic marijuana.

[4] Rader was arrested on an outstanding warrant, and during a search incident to arrest police found a bag containing 13.84 grams of cocaine hidden in Rader's underwear. Additionally, a cell phone belonging to Rader and cash in the amount of $836 were found on the side of the bed where Rader had been lying. Subsequent analysis of the cell phone revealed photos of Rader holding large stacks of cash and a close-up photo of a hand holding a stack of cash and a bag of what appears to be cocaine. There were also text messages on the cell phone from individuals seeking to obtain cocaine, as well as outgoing messages containing references to cocaine. Some of the text messages referred to Rader by his full name and by his nickname, "Jodie Montana." *Exhibit Volume*, State's Ex. 17.

[5] The State charged Rader with Count I, Level 4 felony possession of cocaine; Count II, Level 2 felony dealing in cocaine; and Count III, Class A misdemeanor possession of a synthetic drug. The State also alleged that Rader was a habitual offender. A jury trial was held on July 12, 2016, and Rader was found guilty of Counts I and II, but acquitted of Count III. Rader waived his right to a trial by jury for the enhancement phase, and following the presentation of evidence, the trial court found him to be a habitual offender.

[6] The matter proceeded to sentencing on August 11, 2016. In its oral sentencing statement, the trial court imposed a one-year sentence on Count I and the advisory seventeen-and-a-half-year sentence on Count II, and ordered those sentences to run concurrently. The court then imposed a separate ten-year sentence on the habitual offender allegation and ordered it to run consecutive to

Count II, for a total of twenty-seven and a half years. The trial court ordered twenty years of the aggregate sentence to be executed at the Department of Correction, followed by two and a half years in community corrections, and then five years on probation.

[7] In a written sentencing order entered the same day, the trial court imposed a one-year sentence on Count I and a twenty-year sentence on Count II and ordered those sentences to be served concurrently. The court then imposed a separate ten-year sentence on the habitual offender allegation and ordered it to run consecutive to Count II, for an aggregate sentence of thirty years. The court ordered further that twenty years of the sentence would be executed in the DOC, followed by two and a half years in community corrections, followed by five years on probation—leaving two and half years of the thirty-year aggregate sentence unaccounted for. On September 20, 2016, the trial court entered an amended sentencing order purporting to change the period of probation from five years to seven and a half years, but reaffirming the prior written sentencing statement in all other respects.[1] Rader now appeals.

---

[1] Rader notes a potential jurisdictional issue with the amended sentencing order. Rader filed his Notice of Appeal on August 17, 2016, and the Notice of Completion of Clerk's Record was noted on the Chronological Case Summary on August 31, 2016. *See* Ind. Appellate Rule 8 (providing that the appellate court acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the CCS); *Jernigan v. State*, 894 N.E.2d 1044, 1046 (Ind. Ct. App. 2008) (noting that once an appeal is perfected, the trial court loses subject matter jurisdiction except for certain limited purposes). It therefore appears that the trial court lacked jurisdiction to enter the amended sentencing order on September 20, 2016. Because we remand this matter for correction of the sentencing order, we need not resolve this issue.

## Discussion & Decision

### 1. Sufficiency of the Evidence

[8] Rader first argues that the State presented insufficient evidence to support his conviction for dealing in cocaine. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[9] To convict Rader of Level 2 felony dealing in cocaine as charged, the State was required to prove that Rader possessed, with intent to deliver, pure or adulterated cocaine in an amount of ten grams or more. *See* Ind. Code § 35-48-4-1. Rader does not dispute that he possessed cocaine in an amount greater than ten grams. Instead, he argues that he possessed the cocaine for personal use only and that the State presented insufficient evidence to prove that he had the necessary intent to deliver. "Because intent is a mental state, triers of fact

generally must resort to the reasonable inferences arising from the surrounding circumstances to determine whether the requisite intent exists." *Love v. State*, 741 N.E.2d 789, 792 (Ind. Ct. App. 2001) (quoting *McGuire v. State*, 613 N.E.2d 861, 864 (Ind. Ct. App. 1993), *trans. denied*). Although a conviction of possession with intent to deliver may be supported by circumstantial evidence, where the amount of the drug involved is less than twenty-eight grams, that evidence must consist of something more than the amount of the drug standing alone. *Id.*; I.C. § 35-48-4-1(b).

[10] The State presented evidence that Rader possessed 13.84 grams of cocaine. Sergeant Malady testified that based on his training and experience, this is an amount greater than a common user would typically possess. Officer Walters testified that the cocaine had a street value between $1000 and $1300. In addition to evidence concerning the amount of cocaine Rader possessed, the State presented evidence that Rader was also found to be in possession of $836 in cash. Sergeant Malady testified it was unusual for drug users to have so much cash because they typically use their money to buy drugs. Moreover, Rader's cell phone contained several photographs taken in the few days preceding his arrest depicting Rader holding large amounts of cash. Additionally, there was a close-up picture of a hand holding a stack of cash together with a bag of drugs. The phone also contained numerous text messages from individuals seeking drugs. For example, one text read "I need more whats a ball cost me", another read "I got 20 for some blow", another read "U got a eight ball I need", and yet another read "I told u I didn't like

uppers an u cut it an put that shit in it and I know u did I can taste it damn man". *Exhibit Volume*, State's Exhibit 17. The phone also contained an outgoing text message that read "Ill be back by morning and i got some decent ass white girl." *Id.* The State presented testimony that the terms used in these text messages were street slang for cocaine. This evidence, when taken together, was more than sufficient to support a reasonable inference that Rader possessed the requisite intent to deliver cocaine, and Rader's arguments to the contrary are nothing more than requests to reweigh the evidence.

## 2. Sentencing

[11]   Next, Rader argues that it is necessary to remand this case for correction and clarification of the sentencing order. Specifically, Rader argues that we should remand with instructions that Rader's sentence be corrected to reflect the sentence set forth in the trial court's oral sentencing statement. The State agrees that remand is necessary due to discrepancies between the oral and written sentencing statements, but argues that we should leave it to the trial court to resolve which sentencing statement most accurately reflects its intent.

[12]   "When oral and written sentencing statements conflict, we examine them together to discern the intent of the sentencing court." *Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010). "Rather than presuming the superior accuracy of the oral statement, we examine it alongside the written sentencing statement to assess the conclusions of the trial court." *Dowell v. State*, 873 N.E.2d 59, 60 (Ind. 2007) (quoting *McElroy v. State*, 865 N.E.2d 584, 589 (Ind.

2007)).  Where the oral and written sentencing statements conflict, this court has the option of crediting the statement that accurately pronounces the sentence or remanding for resentencing.  *McElroy*, 865 N.E.2d at 589.

[13]     As set forth above, there are discrepancies between the trial court's written and oral sentencing statements.  In its oral sentencing statement, the trial court imposed an aggregate sentence of twenty-seven and a half years, with twenty years executed in the DOC, two and a half years on community corrections, and five years on probation.  The written sentencing statement entered the same day, however, imposed a thirty-year aggregate sentence, with twenty years executed in the DOC, two and half years on community corrections, and five years on probation—leaving two and half years of the aggregate sentence unaccounted for.  The amended written statement, although perhaps entered in excess of the trial court's jurisdiction, purports to impose an aggregate sentence of thirty years, with twenty years executed in the DOC, two and half years on community corrections, and seven and half years on probation.  While there are clear discrepancies between the oral and written sentencing statements, we cannot agree with Rader's assertion that the trial court's true intent is unequivocally expressed in its oral sentencing statement.  Because the trial court's intent is unclear, we remand and instruct the trial court to enter a new sentencing statement clarifying its intent.

[14]     We also note other sentencing errors that must be corrected on remand.  First, in both the oral and written sentencing statements, the trial court treated Rader's habitual offender status as a separate crime and ordered it to run

consecutive to the sentence imposed on Count II. Ind. Code § 35-50-2-8(j) specifically provides that "[h]abitual offender is a status that results in an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence." Rather, the trial court "shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced." *Id.*

[15] Additionally, although not argued by either party, we note two other problems with the sentences imposed. First, the minimum sentence for Count I, a Level 4 felony, was two years. *See* I.C. § 35-50-2-5.5 (providing that the sentencing range for a Level 4 felony is between two and twelve years). Nevertheless, the trial court imposed a sentence of one year for that conviction. More importantly, however, we note an obvious double jeopardy violation. *See Whitham v. State*, 49 N.E.3d 162, 168 (Ind. Ct. App. 2015) (explaining that questions of double jeopardy implicate fundamental rights and therefore may be raised by this court *sua sponte*), *trans. denied*. Where the same cocaine supports both a possession and a dealing charge, possession is a lesser-included offense of dealing. *Harrison v. State*, 901 N.E.2d 635, 643 (Ind. Ct. App. 2009), *trans. denied*. "Where the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Id.* at 643-44 (quoting *Mason v. State*, 532 N.E.2d 1169, 1172 (Ind. 1989)). Here, the only cocaine introduced into evidence was the 13.84 grams found in Rader's underwear. Because the same cocaine supported both

the dealing and the possession offenses, Rader may not be convicted and sentenced on both the greater and the lesser offenses. We therefore reverse Rader's possession conviction and remand with instructions to vacate that conviction and the sentence imposed thereon.

Judgment affirmed in part, reversed in part, and remanded with instructions.

Riley, J. and Crone, J., concur.