**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Special Assistant to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jan 31 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ALLAN KIRKLEY,          )
                          )
   Appellant-Defendant,     )
                          )
     vs.               )    No. 28A04-1307-CR-362
                          )
STATE OF INDIANA,        )
                          )
   Appellee-Plaintiff.      )

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1203-FC-14

**January 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The State charged Allan Kirkley with two counts of class C felony child molesting, alleging that he fondled his live-in girlfriend's two young children. A jury found him guilty on one count, and the trial court sentenced him to six years, with one year suspended to probation. Kirkley challenges the sufficiency of the evidence supporting his conviction, claiming that the victim's testimony was incredibly dubious. He also contends that his sentence is inappropriate in light of the nature of the offense and his character. We conclude that the victim's testimony was not incredibly dubious, and Kirkley has failed to persuade us that his sentence is inappropriate. Consequently, we affirm his conviction and sentence.

**Facts and Procedural History**

The facts most favorable to the jury's verdict are that Paula and Clint Terrell had a twin son and daughter, M.T. and S.T., who were born in June 2001. The Terrells divorced in 2005, and Paula remained with the twins in the marital home. After the home was foreclosed on in May 2008, Paula and the twins moved into the home of her boyfriend, Kirkley, who also had children. M.T. shared an upstairs bedroom with one of Kirkley's sons, and S.T. shared an upstairs bedroom with one of his daughters.

M.T. and Kirkley's son slept in beds that were three or four feet apart. One night M.T. was awakened by a squeak on the stairway leading to his bedroom. Kirkley entered the bedroom, pulled down M.T.'s blanket and shorts, and touched M.T.'s penis for several minutes. Kirkley told M.T., "[D]on't tell anybody or else." Tr. at 46. M.T. took this to mean that Kirkley "might hurt [his] mom or [his] sister or somebody." *Id.* Kirkley's son was

2

asleep during this incident. Kirkley molested M.T. in a similar manner three or four times over the next several weeks. During one incident, Kirkley's son woke up and got out of bed to go downstairs "to use the bathroom or something." *Id*. at 47. Kirkley crouched beside M.T.'s bed so that his son could not see him. *Id*. at 66-67. M.T. did not fight or scream during the molestations because he was scared, and he did not tell anyone about them because he was "embarrassed and scared." *Id*. at 50.

Paula and the twins stayed with Kirkley for several months and moved out after she and Kirkley ended their intimate relationship. They remained friends for several years, however, and Paula and the twins frequently visited Kirkley and his family. M.T. once spent the night alone with Kirkley and was not molested. At one point, Paula asked M.T. if anyone had touched him inappropriately, but he "blew the question off" because he "was happy that it was Christmas and [he] didn't really want to think about something like that." *Id*. at 54.

Clint obtained primary custody of the twins in August or September 2011. In January 2012, the twins' stepmother, Lora Terrell, asked them if anyone had touched them inappropriately. Both M.T. and S.T. said that Kirkley had done so. In March 2012, the State charged Kirkley with two counts of class C felony molesting, one each as to M.T. and S.T.[1] At trial, M.T. testified to the events described above. S.T. testified that Kirkley came into her bedroom one night and touched her bottom. Kirkley took the stand and denied molesting either child. The jury found Kirkley guilty on the count relating to M.T. and not guilty on the

---

[1] *See* Ind. Code § 35-42-4-3(b) ("A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.").

count relating to S.T. The trial court sentenced Kirkley to six years, with one year suspended to probation. Kirkley now appeals.

## Discussion and Decision

### I. Sufficiency of Evidence

Kirkley challenges the sufficiency of the evidence supporting his conviction. Our standard of review is well settled:

> When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. We consider only the probative evidence and reasonable inferences drawn therefrom that support the finding of guilt. We likewise consider conflicting inferences in the light most favorable to the conviction. We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt.

*Neese v. State*, 994 N.E.2d 336, 339 (Ind. Ct. App. 2013) (citations omitted). "A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a conviction for child molesting." *Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

Kirkley seeks reversal via the "incredible dubiosity" rule. As explained by our supreme court,

> Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002) (citations omitted).

Kirkley contends that M.T.'s testimony was incredibly dubious because M.T. did not disclose the molestations for over three years and did so only after being questioned by his stepmother. We disagree. Greene County Prosecutor's Office investigator Julie Criger testified that child molesting victims "typically do not" report the abuse right away. Tr. at 197. Moreover, M.T. testified that he was embarrassed about the molestations and that Kirkley had threatened him not to tell anyone, and Clint testified that the children "had felt more comfortable talking to Lora." *Id*. at 164. Kirkley also claims that "M.T.'s testimony that Kirkley continued to fondle him even while Kirkley's son, who was present in the bedroom, woke up and went downstairs 'runs counter to human experience' such that no reasonable person could believe it." Appellant's Br. at 8. Again, we disagree. As the State observes, "It was dark, Kirkley crouched down to avoid notice, and it is conceivable that a bleary-eyed and semi-awake young child could have readily missed seeing him, especially when Kirkley's presence would have been wholly unexpected upstairs." Appellee's Br. at 6.

Kirkley states that Paula, who testified at trial, did not believe that he had any opportunity to commit the molestation, "particularly given that she was likely awake downstairs at the time [it was] alleged to have occurred," and that Lora, "who did not testify at trial, had a clear motive to coerce the children into making the allegations against [him]." Appellant's Br. at 9. These were credibility matters for the jury to determine, and we will not

second-guess that determination on appeal.[2] Kirkley also suggests that it is inherently improbable that "Kirkley fondled M.T. in the presence of others but never while he and M.T. were alone[.]" *Id.* It is not inherently improbable for a person to do something illegal in the presence of others that he would not do when alone; indeed, it is common knowledge that some may derive a thrill from the risk of being caught. In sum, we cannot say that M.T.'s testimony was so incredibly dubious or inherently improbable that no reasonable person could believe it. Therefore, we conclude that the "incredible dubiosity" rule is inapplicable and affirm Kirkley's conviction.

## II. *Appropriateness of Sentence*

Kirkley asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the question "is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). "The defendant has the burden of persuading us that his sentence is inappropriate." *Id.* at 267.

---

[2] Kirkley places great emphasis on Clint and Lora's purported motive to coerce M.T. and S.T. to make false allegations against him in order to gain custody of the children. As mentioned above, Clint obtained primary custody of the children in August or September 2011, and the molestations were not revealed until January 2012. *See*, *e.g.*, Tr. at 247 (Paula's testimony); *id.* at 147 (Greene County Sheriff's Deputy James O'Malley's testimony); Appellant's App. at 13 (probable cause affidavit). Clint testified that the molestations were revealed in January 2011, Tr. at 163, but this is obviously either a misstatement or a scrivener's error in the transcript. Subsequently, Paula was restricted to supervised visitation with the children. The jurors were made aware of Clint and Paula's custody dispute and were free to draw their own conclusions about the parties' motives and credibility.

6

"When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Speer v. State*, 995 N.E.2d 1, 13 (Ind. Ct. App. 2013), *trans. denied*. The advisory sentence for a class C felony is four years, with a range of two to eight years. Ind. Code § 35-50-2-6. Kirkley was sentenced to six years, with one year suspended to probation. Kirkley argues,

> When considering the particularized circumstances of this offense compared to other offenses of this nature, there were no circumstances that set this offense apart and warranted an aggravated sentence. While Kirkley was in a position of trust, this can be said about the vast majority of child molesting offenses. And while it is true this offense involved a young child, this too can be said about many child molesting offenses. None of the circumstances in this case warranted a sentence above the advisory sentence.

Appellant's Br. at 10.

We strongly disagree. The unfortunate fact that many children are molested by a person in a position of trust does not make this offense any less egregious, and M.T.'s young age actually militates in favor of a sentence above the advisory term. *See*, *e.g.*, *Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005) ("Abusing a position of trust is, by itself, a valid aggravator which supports the maximum enhancement of a sentence for child molesting."); *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011) ("[Y]ounger ages of victims tend to support harsher sentences"); Ind. Code § 35-38-1-7.1(a) (stating that trial court may consider as aggravating circumstances that victim of offense was less than twelve years old when offense was committed and that defendant "was in a position having care, custody, or control of the victim of the offense"). Kirkley molested the six- or seven-year-old son of his live-in girlfriend as he lay in bed in the middle of the night and threatened him not to tell anyone "or

7

else." Tr. at 46. Quite simply, the disturbing nature of the offense demands a sentence significantly longer than the four-year advisory sentence for a class C felony.

As far as his character is concerned, Kirkley acknowledges that he was convicted of operating while intoxicated in 1988 but points out that he has otherwise "led a law-abiding life." Appellant's Br. at 10. He also mentions his positive work history and strong social and family support, as well as the probation officer's determination that he would be at low risk to reoffend. Be all that as it may, Kirkley's abuse of his position of trust and his victimization of a young child reflect negatively on his character, and ultimately he has failed to persuade us that his sentence is inappropriate in light of *both* the nature of the offense and his character. Therefore, we affirm his sentence.

Affirmed.

BAKER, J., and NAJAM, J., concur.