**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**PAUL M. BLANTON**
**JEFFREY K. BRANSTETTER**
Blanton, Branstetter, & Pierce, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERID T. BENNETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 59A05-1306-CR-277 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Frank Newkirk, Special Judge
Cause No. 59C01-1112-FB-77

**March 25, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

# CASE SUMMARY

In the months leading up to December of 2011, Officer Randall Sanders of the Paoli Police Department and Detective Shane Staggs of the Indiana State Police received information from multiple confidential informants ("CIs"), each of whom had previously proven to be reliable, that Appellant-Defendant Jerid R. Bennett was engaged in illegal drug activity at his residence in Paoli. While conducting surveillance of Bennett's residence on the evening of December 6, 2011, Officer Sanders observed Kurt Sugarman arrive at Bennett's residence, walk around to a side entrance to the garage, return to his vehicle less than five minutes later, and drive away. Detective Staggs stopped Sugarman for a traffic infraction soon after he left Bennett's residence. Sugarman was arrested after Detective Staggs saw drug paraphernalia in plain view in Sugarman's vehicle. Sugarman subsequently admitted to police that he had visited Bennett's residence for the purpose of purchasing cocaine and that he had, in fact, purchased cocaine from Bennett for $50.00. Soon thereafter, Detective Staggs requested and received a search warrant for Bennett's residence. Law enforcement officers recovered substantial evidence of drug activity during their subsequent search of Bennett's residence.

On December 8, 2011, Appellee-Plaintiff the State of Indiana charged Bennett with one count of Class B felony dealing in cocaine, one count of Class D felony possession of cocaine, one count of Class D felony maintaining a common nuisance, and one count of Class A misdemeanor possession of marijuana. Following a jury trial, Bennett was found guilty as charged. On appeal, Bennett challenges his convictions, contending that (1) the trial

2

court abused its discretion in admitting certain evidence, (2) the trial court erred in allowing the State to show certain text messages to the jury during its rebuttal closing argument, (3) the trial court erred in allowing the State to amend the charging information, and (4) his conviction for Class D felony possession of cocaine is barred by double jeopardy. Concluding that Bennett's conviction for Class D felony possession of cocaine is barred by double jeopardy but finding no other error, we affirm the judgment of the trial court in part and vacate Bennett's conviction for Class D felony possession of cocaine.

## FACTS AND PROCEDURAL HISTORY

Approximately two or three months before December 6, 2011, Officer Sanders received information from a CI that Bennett was engaged in illegal drug activity at his residence in Paoli. Officer Sanders was aware that the CI had provided information during past investigations that had proven to be reliable. In addition, at some point during the month before December 6, 2011, two CIs informed Detective Staggs that Bennett was dealing cocaine and prescription drugs from his residence. Detective Staggs was also aware that these CIs had proven credible during prior investigations.

Based on the information provided by the CIs, the Paoli Police Department decided to conduct surveillance of Bennett's residence during the evening hours of December 6, 2011. Officer Sanders began the surveillance of Bennett's residence at approximately 10:00 p.m. While conducting surveillance, Officer Sanders observed a vehicle pull into Bennett's driveway. Officer Sanders observed a man, subsequently identified to be Sugarman, exit the vehicle and approach the door on the side of the garage that was attached to Bennett's

3

residence. Sugarman left Bennett's residence less than five minutes later. Officer Sanders then alerted Detective Staggs who, upon following Sugarman's vehicle, observed that Sugarman's registration was expired.

Detective Staggs initiated a traffic stop of Sugarman's vehicle. As he approached Sugarman's vehicle, Detective Staggs observed several hypodermic needles in plain view in the center console of the vehicle. One of the hypodermic needles appeared to be "loaded, ready to go." Tr. p. 44. Sugarman was placed under arrest. During a search incident to Sugarman's arrest, Detective Staggs discovered a baggie containing a white powdery substances that Sugarman identified as cocaine. Sugarman indicated that he had purchased the cocaine from Bennett at Bennett's residence a short time earlier.

Sugarman admitted that he met Bennett in the garage attached to Bennett's residence and purchased the cocaine from Bennett for $50.00. Sugarman also showed Detective Staggs his cellular phone, including a text message that he sent to an individual he referred to as "Coke Man" at approximately 10:30 p.m., asking if the recipient "got any left?" State's Ex. 3. The recipient responded a few minutes later saying "yeah a lil bit." State's Exs. 2, 86. Sugarman identified "Coke Man" as Bennett.

Sugarman described Bennett as a heavy-set man who walked with a limp. Based on his familiarity with Bennett, Detective Staggs knew this description to be accurate. Sugarman also told Detective Staggs that Bennett lived across the street from another state trooper's residence. Detective Staggs also knew this information to be accurate.

Based on Officer Sanders's observations, Sugarman's statements, his personal

4

knowledge regarding the accuracy of Sugarman's statements, and the prior statements of the CIs, Detective Staggs secured a search warrant for Bennett's residence. Detective Staggs, along with several other officers, executed the search warrant at approximately 3:45 a.m. on December 7, 2011. Detective Staggs and the other officers recovered a great deal of evidence from Bennett's residence which strongly suggested that Bennett dealt in narcotics or controlled substances and possessed cocaine. This evidence included digital scales, multiple plastic baggies containing white residue, an orange and yellow container containing a white residue, a pill in a clear plastic baggie, an opened box of plastic sandwich bags, a tin foil and glass smoking device, a plastic container containing seeds, a multi-colored glass smoking device, a glass smoking device containing a burnt residue, two plastic baggies containing a brownish substance, and shortened ink pens described as "tooters" containing white residue. Detective Staggs testified that in his experience, he knows that "tooters" are used to snort cocaine. The officers and troopers also recovered $736 and a cellular phone from Bennett.

On December 8, 2011, the State charged Bennett with one count of Class B felony dealing in cocaine, one count of Class D felony possession of cocaine, one count of Class D felony maintaining a common nuisance, and one count of Class A misdemeanor possession of marijuana. On July 27, 2012, Bennett filed a motion to suppress certain evidence recovered during a search of his residence. The trial court denied Bennett's motion to

5

suppress on August 1, 2012.[1]

Bennett's three-day jury trial commenced on April 10, 2013. Following the presentation of its evidence, the State requested permission to amend the date on the charging information. This request was granted over Bennett's objection. On April 12, 2013, the jury found Bennett guilty as charged. On May 16, 2013, the trial court sentenced Bennett to an aggregate sixteen-year term with one year suspended to probation. The trial court also ordered that Bennett's sentence in the instant matter be served consecutively to Bennett's sentence stemming from an unrelated criminal matter. This appeal follows.

## DISCUSSION AND DECISION

Bennett contends that the trial court abused its discretion in admitting certain evidence at trial, erred in allowing the State to show certain text messages to the jury during the State's rebuttal closing argument, and erred in allowing the State to amend the charging information at trial. Bennett also contends that his Class D felony possession of cocaine conviction is barred by double jeopardy.

## I. Whether the Trial Court Abused Its Discretion in Admitting Certain Evidence

In raising the contention that the trial court abused its discretion in admitting certain evidence, Bennett claims that the trial court abused its discretion in admitting certain evidence recovered during a search of his residence. Bennett also claims that the trial court abused its discretion in admitting certain exhibits which depicted text messages on Bennett's

---

[1] Bennett subsequently sought and was denied permission to file an interlocutory appeal challenging the trial court's denial of his motion to suppress.

cellular phone which referred to Bennett's alleged criminal drug activity.

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id*.

*Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id*. (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

### A. Evidence Recovered from the Search of Bennett's Residence

Bennett claims that the search of his residence was in violation of both the federal and state constitutions because the search warrant was issued without a showing of probable cause. It is well-established that both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *See State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006); *Query v. State*, 745 N.E.2d 769, 771-72 (Ind. 2001); *State v. Shipman*, 987 N.E.2d 1122,

7

1126 (Ind. Ct. App. 2013); *Breitweiser v. State*, 704 N.E.2d 496, 498 (Ind. Ct. App. 1999).

"As we have explained before, 'probable cause' is a fluid concept incapable of precise definition and must be decided based on the facts of each case." *Shipman*, 987 N.E.2d at 1126 (citing *Casady v. State*, 934 N.E.2d 1181, 1188 (Ind. Ct. App. 2010), *trans. denied*). "In deciding whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id*. (citing *Casady*, 934 N.E.2d at 1188-89).

> The duty of a reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. [*Spillers*, 847 N.E.2d at 953]. In this sense, a "reviewing court" includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id*. A "substantial basis" requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id*. We review the trial court's substantial basis determination de novo, but we nonetheless afford significant deference to the magistrate's determination as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination. *Id*. We consider only the evidence presented to the issuing magistrate, not after-the-fact justifications for the search. *Casady*, 934 N.E.2d at 1189. In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases should be resolved in favor of upholding the warrant. *Id*.

*Id*. "'A presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption.'" *Iddings v. State*, 772 N.E.2d 1006, 1012 (Ind. Ct. App. 2002) (quoting *Rios v. State*, 762 N.E.2d 153, 156 (Ind. Ct. App. 2002)).

Indiana Code section 35-33-5-2 sets forth the requirements for information that is

8

required to be included in an affidavit for a search warrant. If a warrant is sought based on hearsay information, "the affidavit must either: (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; *or* (2) contain information that establishes that the totality of the circumstances corroborates the hearsay." Ind. Code § 35-33-5-2(b) (emphasis added).

> The trustworthiness of hearsay for the purpose of establishing probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activity by the suspect that is not ordinarily easily predicted. [*Spillers*, 847 N.E.2d at 954]. These examples are not exclusive, and, depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay. *Id.* One such additional consideration is whether the informant has made declarations against penal interest. *Id.* Indeed, our supreme court has held that "[d]eclarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of Ind. Code § 35-33-5-2(b)(1)." [*Id.*] (quoting *Houser v. State*, 678 N.E.2d 95, 100 (Ind. 1997)).

*Shipman*, 987 N.E.2d at 1127.

In support of his claim that the search warrant lacked probable cause, Bennett relies on the Indiana Supreme Court's opinion in *Spillers*. In *Spillers*, the Indiana Supreme Court recognized that declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant, but explained that not all statements admitting to criminal conduct are sufficient to establish probable cause. 847 N.E.2d at 956-57. The informant was caught "red-handed" with illicit drugs in his possession during a traffic stop. *Id.* at 956.

9

After he was caught, the informant gave the police information that Spillers was his supplier. *Id*. The State argued that the informant's statements were sufficient to establish his credibility because the statements were against the informant's penal interests. *Id*. at 953.

The Indiana Supreme Court disagreed and held that "[a]lthough [the informant] admitted committing additional crimes of possession of cocaine, his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id*. at 956. The Court further stated, "[i]n essence, because [the informant] had already been caught with cocaine in his possession, his decision to reveal his source to police did not subject him to any additional criminal liability." *Id*. at 956-57. The Indiana Supreme Court further determined that the totality of the circumstances was insufficient to corroborate the informant's hearsay statement and "thus [did] not provide a basis demonstrating the existence of probable cause for the issuance of the search warrant." *Id*. at 957.

In the instant matter, on December 6, 2011, Detective Staggs initiated a traffic stop after determining that Sugarman was driving with an expired registration. Upon approaching Sugarman's vehicle, Detective Staggs observed several hypodermic needles in plain view in the center console of the car. One of the hypodermic needles appeared to be "loaded, ready to go." Tr. p. 44. Sugarman was placed under arrest. During a search incident to Sugarman's arrest, Detective Staggs discovered a baggie containing a white powdery substance, which Sugarman identified as cocaine. Sugarman also told Detective Staggs that he had just purchased the cocaine from Bennett at Bennett's residence. Bennett argues that, like in *Spillers*, Sugarman's identification of him as the source for the cocaine could not be

10

considered a statement against Sugarman's penal interest as it did not subject Sugarman to any additional criminal liability and amounted to an obvious attempt to curry favor with the police.

However, even accepting Bennett's argument as true, here, unlike in *Spillers*, the State's affidavit supporting its request for a search warrant contained additional information which established that the totality of the circumstances corroborated Sugarman's statements. Within the month prior to Sugarman's arrest, Detective Staggs received information from multiple CIs indicating that Bennett was engaged in illegal drug activity at his residence. Both of these CIs had provided information during past investigations and had proven to be reliable.

Bennett argues that the trial court should not have considered the information provided by the CIs because the information was not provided immediately before Detective Staggs requested the search warrant but rather was provided within the month prior to the request for a search warrant and, as a result, was stale. We disagree. In *Breitweiser*, we noted that "probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issue … [i]nstead, the staleness must be judged by the facts and circumstances of each case." 704 N.E.2d at 499. "Where an affidavit merely recites an isolated crime … time between the occurrence and the issuance of the warrant will likely be crucial to a determination of probable cause." *Id*. at 500. "However, where the affidavit or testimony recites criminal activity of a protracted or continuous nature … such time is of less significance." *Id*.

11

Here, Bennett's alleged acts constitute crimes of a protracted and continuing nature. The CIs told Detective Staggs that Bennett was engaged in criminal drug activity at his residence. In addition, Sugarman indicated that he had purchased cocaine from Bennett on at least two occasions and referred to Bennett as "[C]oke [M]an." Appellant's App. p. 278. In light of the continuing nature of Bennett's alleged criminal actions, we determine that the timing of the CIs' statements was not of great significance as it indicated that Bennett was engaged in ongoing drug dealing within the months prior to the request for the search warrant. As such, the statements were not stale.

In addition, Officer Sanders was conducting surveillance of Bennett's residence on December 6, 2011, and observed Sugarman arrive at Bennett's residence, walk around to a side entrance to the garage, return to his vehicle less than five minutes later, and drive away. Sugarman's admission that he had just bought cocaine from Bennett at Bennett's residence was consistent with Officer Sanders's observations. In addition, Sugarman described Bennett as a heavy set man who walked with a limp. Detective Staggs was familiar with Bennett and knew this description to be accurate. Sugarman also indicated that Bennett's home was located across the street from the home of an Indiana state trooper. Detective Staggs also knew this information to be accurate.

We conclude that the totality of the circumstances corroborated Sugarman's statements. As such, we conclude that the search warrant was supported by probable cause. The trial court did not abuse its discretion in admitting the evidence recovered from Bennett's residence at trial.

12

## B. Text Messages

Bennett also claims that the trial court abused its discretion in admitting State's Exhibits 86-91, 93-102, and 104-07. The challenged exhibits are pictures of certain text messages that referred to Bennett's act of dealing in cocaine. Specifically, Bennett claims that the challenged exhibits are evidence of other crimes, wrongs, or acts committed by Bennett, which was admitted in violation of Indiana Evidence Rule 404(b) ("Evidence Rule 404(b)").

> When addressing the admissibility of evidence under [Evidence] Rule 404(b), courts must utilize a two-prong analysis. *Scalissi v. State*, 759 N.E.2d 618, 623 (Ind. 2001). First, the court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Evidence Rule 403. *Id.* We will reverse a trial court's determination of admissibility only for an abuse of discretion. *Id.*

*Wages v. State*, 863 N.E.2d 408, 410 (Ind. Ct. App. 2007).

"Evidence Rule 404(b) was designed to assure that 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997) (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)). Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2).

13

Moreover, Evidence Rule 404(b) does not bar evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee*, 689 N.E.2d at 439. "'Other acts are 'intrinsic' if they occur at the same time and under the same circumstances as the crimes charged.'" *Wages*, 863 N.E.2d at 411 (quoting *Holden v. State*, 815 N.E.2d 1049, 1054 (Ind. Ct. App. 2004), *trans. denied*). In addition, "'[e]vidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.'" *Id.* (quoting *Bocko v. State*, 769 N.E.2d 658, 664-65 (Ind. Ct. App. 2002), *trans. denied*).

Again, the challenged exhibits are pictures of text messages that refer to Bennett's act of dealing in cocaine. The State argues that the text messages were intrinsic to the charged crimes because they showed that Bennett had access to and possessed cocaine in the hours leading up to his sale of cocaine to Sugarman on December 6, 2011. For instance, State's Exhibit 90 depicts a series of texts which were sent at approximately 2:00 p.m. on December 6, 2011, and seem to express the sender's pleasure with the quality of a drug received from Bennett, and ask if Bennett had any of the drug left. State's Ex. 89, depicts a series of texts which were sent at approximately 2:30 p.m. on December 6, 2011, reading:

| [Sender]: | Think I need a hot rail for breakfast |
| [Sender]: | Save me like a qt of that if ya can |
| [Bennett]: | Ok getting low out in the country |
| [Sender]: | Alright I really just want like one line |
| [Bennett]: | Ok |

State's Ex. 89. Detective Staggs testified that based upon his experience, the term "hot rail" means a line of cocaine, "qt" is the abbreviation for a quarter gram, and "one line" means a

14

line of cocaine or narcotics.

Exhibits 87 and 88 depict text messages which were sent on December 6, 2011, and seemingly contain references to the purchase and sale of drugs. Exhibit 86 depicts a text that was sent to Bennett by Sugarman. In this text, Sugarman asks Bennett if he "gots any left" and Bennett replies "Yeah a lil bit." State's Ex. 86. Exhibits 91 through 102 and 104 also depict text messages which seemingly contain references to the purchase and sale of drugs.

Exhibit 105 depicts a text sent to Bennett at approximately 8:15 p.m. on December 6, 2011, reading "Do you have 2 grams to sell?" Exhibit 106 depicts a text message sent to Bennett at 8:18 p.m. on December 6, 2011, which reads in part "make sure you save sum plz." Bennett responded "Alright will do." State's Ex. 106. The sender then asks "Wats 200 gonna get me[?]" State's Ex. 106. Exhibit 106 depicts a series of text messages between Bennett and another individual at approximately 9:50 p.m. on December 6, 2011, in which Bennett asks the other individual to come to his residence and instructs the individual to "just come in the side door to the garage[.]"

Upon review, we conclude that the challenged exhibits are intrinsic to the charged crimes as the messaging activity depicted in the challenged exhibits occurs very near in time and place and under the same circumstances as the crimes charged and completes the story of the crime. *See Wages*, 863 N.E.2d at 411. As such, we conclude that the challenged exhibits were not merely presented to show that Bennett acted in accordance with his character. At least one of the challenged exhibits depicted a conversation between Bennett and Sugarman about the sale of cocaine to Sugarman by Bennett which took place a mere couple of hours

15

before Sugarman's admitted purchase of cocaine from Bennett. Furthermore, despite Bennett's claim to the contrary, we do not believe that the probative value of the challenged evidence was outweighed by the alleged prejudicial effect that the admission of the challenged exhibits had on Bennett.

Furthermore still, even if it was error to admit the challenged exhibits into evidence, we conclude that such error was harmless.

> Errors in the admission of evidence ... are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Smith v. State*, 839 N.E.2d 780, 784 (Ind. Ct. App. 2005).

*Robertson v. State*, 877 N.E.2d 507, 514 (Ind. Ct. App. 2007); *see also Crocker v. State*, 989 N.E.2d 812, 822 (Ind. Ct. App. 2013), *trans. denied*.

The State presented substantial, independent evidence of Bennett's guilt during trial. Sugarman testified at Bennett's trial that on December 6, 2011, he purchased cocaine from Bennett for fifty dollars. Sugarman further testified that he sent a text message to Bennett, whom he knew as "Coke Man," asking whether Bennett had any cocaine left. Bennett replied that he had "a lil bit[.]" State's Ex. 2. Pictures of these text messages as depicted on Sugarman's phone were admitted at trial without objection at trial.[2] Sugarman also identified

---

[2] These text messages depict the same conversation that was depicted in State's Exhibit 86.

16

Bennett at trial as the individual from whom he bought cocaine on December 6, 2011.

In addition, the State presented evidence that was recovered during the search of Bennett's residence which strongly suggested that Bennett dealt in narcotics or controlled substances and possessed cocaine. This evidence included digital scales, multiple plastic baggies containing white residue, an orange and yellow container containing a white residue, a pill in a clear plastic baggie, an opened box of plastic sandwich bags, a tin foil and glass smoking device, a plastic container containing seeds, a multi-colored glass smoking device, a glass smoking device containing a burnt residue, two plastic baggies containing a brownish substance, and shortened ink pens described as "tooters" containing white residue. Detective Staggs testified that in his experience, he knows that "tooters" are used to snort cocaine. The officers and troopers also recovered $736 and a cellular phone from Bennett.

In light of the substantial independent evidence of Bennett's guilt, we conclude that the admission of the challenged exhibits was at most harmless. As such, we further conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial.

## II. Whether the Trial Court Erred In Allowing the State to Show Certain Text Messages to the Jury During the State's Rebuttal to Bennett's Closing Argument

Bennett contends that the trial court erred in allowing the State to show four text messages to the jury during the State's rebuttal to Bennett's closing argument. During closing argument, Bennett challenged the State's assertion that the cellular phone that was admitted into evidence belonged to Bennett. The State noted that Detective Staggs had referred to four text messages during his testimony, which demonstrated that the cellular

17

phone belonged to Bennett. The State then requested permission to show the four text messages to the jury for the purpose of rebutting Bennett's assertion that it had failed to demonstrate that the cellular phone that was admitted into evidence belonged to Bennett.

One of the challenged text messages referred to the recipient as Jerid, *i.e.*, Bennett's first name. Another showed that the phone number associated with the cellular phone in question matched the number listed in Sugarman's phone as the contact information for Bennett. Yet another made a reference to Bennett's mother and step-father. The last challenged text message made a reference to Bennett's sister.

## A. Discovery

Bennett claims that the trial court erred in allowing the State to show the challenged text messages to the jury because the State did not provide Bennett with notice of its intent to use the challenged messages during the parties' pre-trial discovery exchanges. The purpose of discovery is to put the other party on notice of the evidence upon which a party intends to rely at trial. *See generally, United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (suggesting that the purpose of pretrial discovery is to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent). We have noted that with regard to the resolution of discovery disputes:

> [a] trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of society and the criminal defendant. Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be

18

eliminated or satisfactorily alleviated.... The trial court must be given wide discretionary latitude in discovery matters since it has the duty to promote the discovery of truth and to guide and control the proceedings, and will be granted deference in assessing what constitutes substantial compliance with discovery orders. Absent clear error and resulting prejudice, the trial court's determinations as to violations and sanctions should not be overturned.

*Lindsey v. State*, 877 N.E.2d 190, 195 (Ind. Ct. App. 2007) (quotation omitted).

During the discovery process, the State notified Bennett that it intended to offer the cellular phone recovered from his residence into evidence during trial. The State also notified Bennett that it intended to offer multiple text messages that were found on the cellular phone into evidence at trial. From these disclosures, we conclude that Bennett was provided sufficient notice that the State intended to introduce the cellular phone, including text messages found thereon, at trial. As such, the State did not commit a discovery violation for failing to include the challenged text messages in its response to Bennett's pretrial discovery request. *See generally, State v. Adamson*, 738 N.W.2d 919, 925-26 (SD 2007) (providing that the State did not commit a discovery violation by admitting certain phone records that were not included on the State's response to the defendant's discovery request because the State notified the defendant that it intended to use phone records at trial and the records were the defendant's own records that he had the ability to obtain at any time).

Furthermore, it must be noted that the State did not seek to read the challenged text messages to the jury during its case-in-chief during trial, but rather in its rebuttal closing argument after Bennett challenged the State's assertion that the cellular phone admitted into evidence belonged to Bennett. The Indiana Supreme Court has held that the State is "entitled

19

to respond to allegations and inferences raised by the defense even if the [State]'s response would otherwise be objectionable." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006). Detective Staggs referred to the challenged text messages during his testimony at trial. The trial court properly allowed the State to respond to Bennett's assertion that the State failed to prove that the cellular phone that was admitted into trial belonged to Bennett.

### B. Authentication

Bennett also claims that the trial court erred in allowing the State to the show the challenged text messages to the jury during its rebuttal closing argument because the State did not provide a separate authentication for the text messages than that offered for the cellular telephone itself. This court has previously recognized that text messages are "part and parcel of the cellular telephone in which they [are] stored, just as pages in a book belong to the book by their very nature." *Hape v. State*, 903 N.E.2d 977, 988 (Ind. Ct. App. 2009), *trans. denied*. Thus, a text message is not extraneous to the cellular phone, but rather intrinsic to the cellular telephone.[3] *See id.* However, in *Hape*, we concluded that even though a text message stored in a cellular telephone is intrinsic to the telephone, if the admission of the substance of a text message is offered for an evidentiary purpose unique from the purpose served by the admission of the phone itself, the text message must be separately authenticated pursuant to Indiana Evidence Rule 901(a). *See id.* at 990.

During trial, the State proffered a cellular phone that was recovered from Bennett's residence and was alleged to belong to Bennett. The cellular phone was admitted into

evidence over Bennett's objection. The record indicates that the cellular phone was admitted to show both that the phone belonged to Bennett and that Bennett used the cellular phone in connection with his act of dealing cocaine. The challenged text messages were shown to the jury during the State's rebuttal closing argument to show that the phone belonged to Bennett. As such, the text messages did not require additional authentication because the text messages were offered for one of the same reasons as the phone itself, *i.e.*, to show that the phone belonged to Bennett. *Cf. id.* at 990-91 (providing that a text message must be separately authenticated when offered for an evidentiary purpose unique from the purpose served by the phone itself).

### III. Whether the Trial Court Erred in Allowing the State to Amend the Charging Information

Bennett also contends that the trial court erred in allowing the State to amend the charging information during trial following the State's presentation of its case-in-chief. Indiana Code section 35-34-1-5 reads in relevant part:

> (a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:
> (1) any miswriting, misspelling, or grammatical error;
> (2) any misjoinder of parties defendant or offenses charged;
> (3) the presence of any unnecessary repugnant allegation;
> (4) the failure to negate any exception, excuse, or provision contained in the statute defining the offense;
> (5) the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged;
> (6) any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;

---

[3] Intrinsic means "[b]elonging to a thing by its very nature; not dependent on external circumstances; inherent; essential." BLACK'S LAW DICTIONARY 842 (8th ed. 2004).

(7) the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;

(8) the failure to state an amount of value or price of any matter where that value or price is not of the essence of the offense; or

(9) any other defect which does not prejudice the substantial rights of the defendant.

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:

> (1) up to:
>> (A) thirty (30) days if the defendant is charged with a felony; or
>> (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date; or
>
> (2) before the commencement of trial;

if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

"An amendment is one of form and not substance if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form." *McIntyre v. State*, 717 N.E.2d 114, 125 (Ind. 1999). "Further, an amendment is of substance only if it is essential to making a valid charge of the crime." *Id*. at 125-26. Furthermore, "[w]hen time is not an element of the crime charged, or 'of the essence of the offense,' the State is only required to prove that the offense occurred at any time within the statutory period of limitations; the State is not required to prove the offense occurred on the precise date alleged." *Poe v. State*, 775 N.E.2d 681, 686 (Ind. Ct. App. 2002).

In the instant matter, following the presentation of its case in chief, the State requested permission to amend the charging information. The charging information originally alleged that Bennett committed the charged crimes "on or about December 7, 2011." Appellant's App. 138-39. The State requested permission to amend the charging information to allege that Bennett committed the charged crimes "on or about December 6, 2011," after it became clear from the State's evidence that Bennett sold the cocaine in question to Sugarman during the late evening hours of December 6, 2011. Appellant's App. pp. 96-97. The amendment requested by the State was not a change to the substance of the charging information as time is not an element of any of the crimes charged. *See* Ind. Code §§ 35-48-4-1(a)(1), 35-48-4-6(a), 35-48-4-13(b)(1), and 35-48-4-11(1). Further, under Indiana law, the allegation that Bennett committed the charged crimes "on or about December 7, 2011" clearly did not limit the State only to the events of December 7, 2011, especially in light of the fact that time is not an element of any of the crimes charged. *See Poe*, 775 N.E.2d at 686-87. As such, we conclude that time was not "of the essence," and, as a result, the State was not required to prove that the offenses occurred on the precise dates alleged.

Because time was not of the essence, we conclude that the requested amendment falls under Indiana Code section 35-34-1-5(a)(7), which again provides that a charging information "may be amended … *at any time* because of any immaterial defect, including: … (7) *the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense*." (Emphases added). The record demonstrates that Bennett committed the charged criminal acts during the late evening hours of December 6,

23

2011, in very close proximity to the date originally listed on the original charging information. Thus, in light of the plain language of Indiana Code section 35-34-1-5(a)(7) coupled with our conclusion that the State was not required to prove that the offenses occurred on the precise dates alleged and the fact that the acts in question occurred in close temporal proximity to December 7, 2011, we conclude that Bennett was sufficiently made aware of the charges against him and could not reasonably be found to have been unable to present any potential defense as a result of the allowed amendment to the charging information. Accordingly, we conclude that the trial court did not err in allowing the State to make the requested amendment to the charging information.

### IV. Whether Bennett's Conviction for Possession of Cocaine Is Barred by Double Jeopardy

Bennett also contends, and the State concedes, that Bennett's conviction for possession of cocaine is barred by double jeopardy because the same cocaine was used to support both his dealing and possession convictions. "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

*Id*. at 49-50 (footnote omitted). We review de novo whether a defendant's convictions

24

violate this provision. *Goldsberry v. State*, 821 N.E.2d 447, 458 (Ind. Ct. App. 2005 (citing *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000)).

In *Harrison v. State*, 901 N.E.2d 635, 643-44 (Ind. Ct. App. 2009), we concluded that the defendant's conviction for possession of cocaine was barred by double jeopardy because the same cocaine was used to support the defendant's dealing and possession convictions. In reaching this conclusion, we noted that the Indiana Supreme Court has held that "where the same cocaine supports both possession of cocaine pursuant to Indiana Code Section 35-48-4-6 and dealing in cocaine pursuant to Indiana Code Section 35-48-4-1, possession of cocaine is a lesser included offense of dealing in cocaine." *Harrison*, 901 N.E.2d at 643 (citing *Hardister v. State*, 849 N.E.2d 563, 575 (Ind. 2006); *Mason v. State*, 532 N.E.2d 1169, 1172 (Ind. 1989)).

"Where the conviction of a greater crime cannot be had without conviction of the lesser crime, the double jeopardy clause bars separate conviction and sentencing on the lesser crime when sentencing is imposed on the greater one." *Harrison*, 901 N.E.2d at 644 (internal quotation omitted). Thus, Bennett may not be convicted and sentenced on both the greater and lesser offenses. Accordingly, we vacate Bennett's conviction for possession of cocaine.

## CONCLUSION

In sum, we conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial, the trial court did not err in allowing the State to show certain text messages to the jury during its rebuttal closing argument, and the trial court did not err in allowing the State to make the requested amendment to the charging information. We also

conclude that Bennett's conviction for possession of cocaine is barred by double jeopardy, and therefore vacate Bennett's conviction for possession of cocaine. Accordingly, we affirm the judgment of the trial court in part and vacate the judgment of the trial court in part.

The judgment of the trial court is affirmed in part and vacated in part.

MATHIAS, J., and PYLE, J., concur.