## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 17 2016, 8:24 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford M. Davenport
Davenport Law Offices
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Massengale,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 17, 2016<br><br>Court of Appeals Case No.<br>48A05-1508-CR-1254<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable David Happe, Judge<br><br>Trial Court Cause No.<br>48C04-1501-F4-118 |

**May, Judge.**

[1] Daniel Massengale was convicted of Level 4 felony burglary,[1] Level 6 felony theft,[2] and Class A misdemeanor theft,[3] and adjudicated an habitual offender.[4] He argues the court should not have admitted his confession. We affirm.

## Facts and Procedural History

[2] Massengale worked for Tuttle's Tree and Landscaping, which is owned by Robert Tuttle. Tuttle ran the business out of his home office and kept work trucks and equipment in his driveway. Employees routinely met Tuttle at his house each morning to gather the equipment they needed for that day's job, but employees were not permitted in Tuttle's home when he was not there.

[3] On the morning of July 4, 2014, Tuttle and three employees met at his house to gather equipment for removing a storm-damaged tree. The employees that day were Massengale, Jacob Cortrecht, and Bobby Hotstettler. They went to a residence a few miles from Tuttle's house and worked until 1:00 p.m., at which point Tuttle told his employees he had a family obligation that would take a couple of hours. He directed the crew to eat lunch and then continue working at the jobsite. The employees had Tuttle's work truck, which contained the

---

[1] Ind. Code § 35-43-2-1.

[2] Ind. Code § 35-43-4-2(a)(1)(A).

[3] Ind. Code § 35-43-4-2(a).

[4] Ind. Code § 35-50-2-8(b).

garage door opener for Tuttle's house and Tuttle's keys for the truck, the work equipment, and Tuttle's house.

[4] Just after lunch, Massengale's glasses fell off when he was in a tree, and a lens popped out of the frame. On other occasions when Massengale's lens had popped out, Massengale had put the lens back in himself without leaving. But this time Massengale asked to leave the work site to get his glasses repaired. He said he was going to Walmart, which was "right up the road" and could be seen from the work site. (Tr. at 129.) Massengale took the work truck and returned "[o]ver two (2) hours" later, which Cortrecht found strange. (*Id*. at 130.)

[5] Tuttle returned to the job site to find Massengale had also just returned to the job site. Massengale claimed he had gone to Walmart to get his glasses fixed. Tuttle instructed the employees to finish the job, then he went to other locations to provide landscaping estimates. Tuttle returned home around 5:30 p.m. and did not notice any damage to the steel doors and deadbolt locks that secured his home. When he went to his bedroom to change his clothes, he noticed his shoes had been pulled out of his closet, the closet was in disarray, and "[a] rifle, a shotgun, a handgun, a small Century safe[5] that sits on the shelf, a five (5) gallon jug of coins, change, and . . . a little box that contained a bunch of silver

---

[5] Tuttle's son, Jacob, testified he had checkbooks, a class ring, and some personal letters in the safe that was stolen from his father's closet. Jacob testified the items were not returned, but he did not testify as to their value.

coins" were missing. (*Id*. at 113) (footnote added). Tuttle's missing items were worth $4,000.00, not including the coins and change.

[6] Rick Hawley is the co-owner of Buck Shot Sporting Goods in New Castle. On July 5, 2014, Keith Massengale, Massengale's father, came to the store to sell a rifle, a shotgun, and a handgun. Hawley collected information about Keith and the weapons, including their serial numbers, on a "firearm purchase sheet" that the business uses to track transactions. (*Id*. at 140.)

[7] Detective Brad Oster of the Madison County Sheriff's Department investigated the burglary at Tuttle's house. Tuttle told the detective he suspected Massengale committed the crime. Detective Oster found the rifle and shotgun that Keith sold to Buck Shot had serial numbers matching Tuttle's rifle and shotgun.

[8] Detective Oster tried four times to interview Massengale. On the first occasion, Massengale asked for counsel.[6] On the fourth occasion, Detective Oster read Massengale his *Miranda*[7] rights, and Massengale acknowledged he understood them. Massengale then confessed he entered Tuttle's home, stole his property, and had his father sell Tuttle's rifle and shotgun.

---

[6] The record is devoid of evidence regarding who initiated the subsequent interviews or what happened on the second and third occasions Detective Oster met with Massengale.

[7] *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) (holding a person who is in custody and about to be interrogated must be informed of his right to remain silent, of the State's ability to use any statements he makes against him in court, and of his right to consult his lawyer or to have a lawyer appointed for him if he is indigent), *reh'g denied*.

[9] The State charged Massengale with Level 4 felony burglary, Level 6 felony theft, and Class A misdemeanor theft and alleged he was an habitual offender. Massengale moved to suppress his statements from the fourth interview because the "State's agents knew during the interrogation process that Mr. Massengale was represented by counsel and wholly failed to provide Mr. Massengale with his counsel" as required by the Sixth Amendment. (App. at 39.) After a hearing at which Detective Oster testified, the court denied Massengale's motion to suppress. The court also denied his objection at trial to the admission of the videotape of his confession. The jury found Massengale guilty as charged.

## Discussion and Decision

[10] Under the facts and circumstances presented in this case, the trial court did not abuse its discretion by admitting Massengale's confession.[8] Admission of evidence is left to the broad discretion of the trial court, *Bennett v. State*, 5 N.E.3d 498, 505 (Ind. Ct. App. 2014), *trans. denied*, and we reverse only for an abuse of that discretion, which occurs when the court's decision was clearly

---

[8] Before the trial court, Massengale asserted the State had violated his Sixth Amendment right to counsel by interviewing him without the counsel that had been appointed for him in an unrelated cause of action. On appeal, Massengale does not challenge the trial court's decision regarding the Sixth Amendment, but instead asserts the State violated his Fifth Amendment right to counsel. When a defendant presents one argument at trial and another on appeal, the appellate argument is waived. *Marshall v. State*, 621 N.E.2d 308, 314 (Ind. 1993). Thus, we cannot reverse Massengale's conviction unless he demonstrates fundamental error. *See Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002) ("To avoid procedural default, the defendant argues . . . the court committed 'fundamental error' . . . ."), *reh'g denied*. However, as we hold herein that the admission of Massengale's confession was harmless, we need not review the merits of Massengale's argument that his confession was inadmissible under the Fifth Amendment. *See, e.g.*, *Layman v. State*, 42 N.E.3d 972, 976 (Ind. 2015) (appellate court should not address constitutional claims if case can be decided on another ground).

against the logic and effect of the facts and circumstances before the court. *Id.* at 505-06. As we conduct our review, we may not reweigh evidence, and we consider both conflicting evidence most favorable to the trial court's ruling and uncontroverted evidence in the defendant's favor. *Id.* at 505.

[11] Indiana law requires we disregard errors in the admission of evidence unless they impact the substantial rights of a party. Ind. Trial Rule 61; Ind. Appellate Rule 66. To determine whether the admission of evidence impacted the substantial rights of a party, we must assess the probability that the challenged evidence impacted the jury's decision. *Bennett*, 5 N.E.3d at 510. If challenged evidence was merely cumulative of other properly admitted evidence, or if there was substantial independent evidence of guilt, then we will deem any alleged error to be harmless. *Id.*

[12] In *Sledge v. State*, 677 N.E.2d 82, 86 (Ind. Ct. App. 1997), Sledge challenged the admission of testimony by a police officer about conversations between Sledge and a confidential informant that the officer had overheard through a hidden microphone worn by the informant. We resolved the issue without addressing the merits of Sledge's argument about hearsay because the confidential informant had testified about the same conversation. "Even assuming the trial court erred by allowing the police officer's testimony, erroneously admitted evidence that is merely cumulative is not reversible error." *Id.*

[13] Massengale challenges the admission of his videotaped confession. When the State presented the videotape of the confession, Massengale objected "based

upon my previous objections." (Tr. at 150.) Massengale did not, however, object when Detective Oster testified about Massengale's admissions:

> Q   And, when you had contact with [Massengale], what did you learn?
>
> A   Um, in my conversation with Daniel Massengale he told me that he had gone to . . . he was working on July 4th with Rob Tuttle. He had left the job site to go to Walmart to fix his glasses and then after leaving Walmart he went to Rob Tuttle's house and entered the home where he took the guns, the change, the safe, that included the checkbook and the collector coins inside of that.
>
> Q   And did he tell you what happened to the long guns after that?
>
> A   Yes. He said he had taken the long guns to his father Keith Massengale and all he was aware of was that his father had sold them to a gun shop in New Castle somewhere.
>
> \* \* \* \* \*
>
> Q   Thank you. And it was Daniel Massengale that told you he had given the guns to his father to sell?
>
> A   Correct.
>
> Q   Detective Oster, you indicated that Daniel Massengale, the defendant, made these admissions regarding going into Rob Tuttle's house, correct?

A     Correct.

(*Id*. at 146-47, 149.)  Because the videotape of Massengale's confession was cumulative of Detective Oster's testimony, which was admitted without objection, "there is no reversible error."  *See Sledge*, 677 N.E.2d at 86 (holding admission of cumulative evidence was not reversible error).

[14]   Even if neither the videotaped confession nor Detective Oster's testimony about Massengale's admissions had been admitted, there was independent evidence from which the jury could have found Massengale guilty.  Massengale was gone from the worksite for over two hours.  His coworkers found that strange because from the worksite they could see the Walmart where Massengale was going to get his glasses repaired.  When Massengale left the worksite, he knew Tuttle was going to a family event for a couple of hours.  Massengale had the keys and garage door opener for Tuttle's house.  Tuttle's house was not damaged during the burglary, which suggests the person who entered had keys. The day after the burglary, Massengale's father sold Tuttle's rifle and shotgun. This substantial independent evidence of Massengale's guilt precludes finding reversible error in the admission of his confession.  *See*, *e.g.*, *Williams v. State*, 43 N.E.3d 578, 583 (Ind. 2015) ("Williams's rights were not prejudiced by the erroneous evidentiary admission" where the record contained substantial, independent evidence of guilt to support the convictions.").

# Conclusion

[15] Because Massengale cannot demonstrate he was harmed by the admission of his confession, no reversible error occurred. Accordingly, we affirm.

[16] Affirmed.


Baker, J., and Brown, J., concur.