## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 25 2018, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keith Cornwell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 25, 2018<br><br>Court of Appeals Case No.<br>49A02-1703-CR-402<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt M. Eisgruber, Judge<br><br>Trial Court Cause No.<br>49G01-1508-MR-29140 |

**Pyle, Judge.**

# Statement of the Case

Keith Cornwell ("Cornwell") appeals his conviction by jury of murder.[1] He argues that the trial court erred when it (1) allowed the State to amend the charging information on the first day of trial; and (2) that his fifty-five-year advisory sentence is inappropriate in light of the nature of the offense and his character. Concluding that the trial court did not abuse its discretion and that Cornwell's sentence is not inappropriate, we affirm the trial court's judgment and sentence.

We affirm.

# Issues

1.     Whether the trial court erred when it allowed the State to amend the charging information on the first day of trial.

2.     Whether Cornwell's sentence is inappropriate.

# Facts

In August 2015, eighteen-year-old Cornwell, Caleb Bixler ("Bixler"), eighteen-year-old John Murphy ("Murphy"), and Ron Trahan ("Trahan") lived together in a rooming house on the eastside of Indianapolis. In the early morning hours of Thursday, August 13, Cornwell, Bixler, and Trahan left the house together. Cornwell and Bixler returned to the house at approximately 5:00 a.m. without

---

[1] IND. CODE § 35-42-1-1.

Trahan. When Murphy came out of his bedroom, Cornwell told him that he knew too much already and that if he "snitch[ed]," Cornwell would kill him when Cornwell got out of prison. (Tr. Vol. 2 at 62). Cornwell then told Murphy that he and Bixler had killed Trahan.

[4] One hour later, Cornwell, Bixler, and Murphy walked to nearby railroad tracks, where Cornwell burned a plastic lunch box that contained a pair of shoes, a shirt, and some gloves. As the lunch box and its contents burned, each of the three men smoked a Newport cigarette. While the men were at the railroad tracks, Cornwell described how he and Bixler had killed Trahan. Specifically, Cornwell explained that Bixler had approached Trahan from behind and strangled Trahan with a shoestring while Cornwell punched Trahan in the face. Bixler then threw Trahan to the ground and began stomping on his head while Cornwell stabbed him. According to Cornwell, at one point, he cut through Trahan's throat and felt a bone.

[5] After Cornwell had described Trahan's murder, the three men began to walk along the railroad tracks. When Murphy asked where they were going, Cornwell told him that it was a surprise. The men ended up in front of an abandoned building, and Cornwell pointed to the spot where Trahan had been killed. Murphy noticed a pillow with blood on it, and Cornwell told him that it was Trahan's blood. There was a large pile of mulch in front of the building, and Cornwell told Murphy that Trahan was buried in the mulch. The three men subsequently returned to their rooming house.

[6] The following day, Friday August 14, Murphy telephoned his father and took him to the abandoned building where Cornwell and Bixler claimed to have killed Trahan. Neither man observed a body, but Murphy's father called 911. Police officers arrived at the scene and discovered Trahan's body in the mulch. Murphy also directed the police to the spot on the railroad tracks where the men had burned the lunch box and articles of clothing. Evidence technicians found a Newport cigarette butt near the burn pile.

[7] Cornwell gave a statement to the police on Friday, August 14. Cornwell told Indianapolis Metropolitan Police Department Homicide Detective Daniel Kepler ("Detective Kepler") that he, Bixler, and Trahan had been at a nearby Rally's restaurant late Wednesday evening into the early morning hours on Thursday, which was August 13. Detective Kepler confirmed the time and date by asking Cornwell, "Wednesday night into Thursday morning, you guys were at Rally's?" (State's Ex. 179). Cornwell responded, "yeah," (State's Ex. 179). Cornwell further explained that after leaving Rally's, the three men had walked around neighborhoods on the eastside of Indianapolis and returned home together.

[8] The State charged Cornwell with murder. The charging information alleged that Cornwell had knowingly killed Trahan on or about August 14, 2015. On the first day of trial, the State made an oral motion to amend the charging information to allege that the offense had occurred on or about August 13, 2015 instead of August 14, 2015. The State explained that this "was more in line with the evidence as laid out in the probable cause affidavit. . . . I know that 'on

or about' would likely cover that, but just to avoid an additional instruction to tell the jury about, we just amended it to the 13th to make it easier and avoid any issue down the road." (Tr. Vol. 2 at 18). Cornwell objected to the amendment. Specifically, he argued that he had "been operating from the point of view that the 14th was charged . . . . I think it's an essential element, and to amend it at this point after the jury's been sworn, I think it's too late to do that. . . . It could have changed the defense." (Tr. Vol. 2 at 18). Cornwell did not request a continuance. The trial court granted the State's request over the defense's objection.

[9] The State's opening statement explained that the criminal investigation began "with a 911 call that came in Friday, August 14, 2015." (Tr. Vol. 2 at 21). Testimony at the trial revealed that Cornwell frequently initiated physical altercations with Trahan, who was quiet and often kept to himself at the rooming house. For example, Cornwell had previously kicked in Trahan's door and grabbed his neck.

[10] The trial testimony also revealed that Trahan had a ligature strangulation mark on his neck, and his hyoid bone and thyroid cartridge had been fractured. He also had multiple contusions on his head and blunt force injuries with fractured nasal, cheek, and upper and lower jaw bones. Trahan also had a fractured skull and twenty-three post-mortem "sharp force injuries on the right side of his head and neck." (Tr. Vol. 2 at 248). His cause of death was multiple blunt-force trauma and ligature strangulation. Other evidence presented at trial revealed that Trahan's blood was on Bixler's jeans and sock and that a Newport cigarette

butt found at the burn pile on the railroad tracks had Bixler's DNA on it. Lastly, Detective Kepler testified that he had reviewed Rally's video footage from the "time period in question . . . from midnight until 2:15 in the morning." (Tr. Vol. 3 at 93). According to Detective Kepler, none of the video footage showed Cornwell, Bixler, or Trahan at Rally's at the time Cornwell had said the three men had been there. The jury convicted Cornwell of murder.

[11] Testimony at the sentencing hearing revealed that Cornwell had no prior criminal history and had come "from a stable and loving home [with] financial support and emotional support and that he had [had many] opportunities and advantages." (Tr. Vol. 4 at 22). However, according to his mother, Cornwell "decided to fabricate a story . . . to fit in with the people he chose to be around and . . . he told them he had [had] a different childhood . . . completely different than what he [had] really had." (Tr. Vol. 3 at 14, 18). Cornwell's mother further agreed that Cornwell had "changed his story to . . . make himself sound more like he was . . . from the street or . . . grew up in a hard knock life kind of thing." (Tr. Vol. 3 at 18-19).

[12] Following the testimony at the sentencing hearing, the trial court noted that Trahan's "brutal death . . . was a kill that was done without justification." (Tr. Vol. 3 at 28). The trial court sentenced Cornwell to a fifty-five (55) year advisory sentence, with fifty-one (51) years executed and four (4) years in community corrections. Cornwell now appeals his conviction and sentence.

# Decision

## 1. Amendment to the Charging Information

Cornwell first argues that the trial court erred when it allowed the State to amend the charging information on the day of trial. Amendments to the charging information are governed by INDIANA CODE § 35-34-1-5. Pursuant to subsection (a), the State may move to amend an information "at any time because of any immaterial defect," which includes "the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense." IND. CODE § 35-34-1-5(a)(7). Subsection (b) applies to "matters of substance" which the State may amend before trial with written notice to the defendant "if the amendment does not prejudice the substantial rights of the defendant." I. C. § 35-34-1-5(b). Lastly, subsection (c) provides that "the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." I. C. § 35-34-1-5(c).

We agree with the State that subsection (a) applies to the present case because amending the charging information to allege that the offense occurred on or about August 13, 2015, instead of on or about August 14, 2015, was an amendment of an immaterial defect. *See Bennett v. State*, 5 N.E.3d 498 (Ind. Ct. App. 2014), *trans. denied*. In *Bennett*, the State requested permission to amend the charging information following the presentation of its case in chief. The charging information had originally alleged that Bennett had committed the

charged crimes "on or about December 7, 2011." *Id.* at 514. The State requested permission to amend the charging information to allege that Bennett had committed the charged crimes "on or about December 6, 2011," after it became clear from the State's evidence that Bennett had sold drugs during the late evening hours of December 6, 2011. *Id.* The trial court granted the amendment, and Bennett was subsequently convicted of dealing in cocaine.

[15] On appeal, Bennett argued that the trial court had erred in allowing the State to amend the charging information. *Id.* We noted that the amendment requested by the State was not a change to the substance of the charging information as time was not an element of any of the crimes charged. *Id.* We further noted that under Indiana law, the allegation that Bennett had committed the charged crimes "on or about December 7, 2011" clearly did not limit the State only to the events of December 7, 2011, especially in light of the fact that time was not an element of any of the crimes charged. *Id.* As such, we concluded that time was not "of the essence," and, as a result, the State was not required to prove that the offenses occurred on the precise dates alleged. *Id.* Because time was not of the essence, we concluded that the requested amendment was an immaterial defect that fell under INDIANA CODE § 35-34-1-5(a)(7) and that the trial court did not err in granting the amendment. *Id.*

[16] Here, as in *Bennett*, the amendment requested by the State was not a change to the substance of the charging information, as time is not an element of murder. *See* IND. CODE § 35-42-1-1. In addition, "time is not of the essence in a case of

murder." *Buchanan v. State*, 263 Ind. 360, 369, 332 N.E.2d 213, 219 (1975). Because time was not of the essence, we conclude that here, as in *Bennett*, the amendment was an immaterial defect under INDIANA CODE § 35-34-1-5(a)(7). The trial court did not err when it allowed the State to amend the charging information.[2]

## 2. Inappropriate Sentence

[17] Cornwell also argues that his fifty-five (55) year advisory sentence was inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and

---

[2] To the extent Cornwell argues that the State made a substantive amendment to the information, Cornwell has waived appellate review of this issue because he failed to request a continuance. *See Keller v. State*, 987 N.E.2d 1099, 1108 (Ind. Ct. App. 2013), *trans. denied,* (explaining that a defendant's failure to request a continuance after a trial court allows a pre-trial substantive amendment to the charging information results in waiver of the issue on appeal). Waiver notwithstanding, we find no error. Cornwell argues that he was prejudiced by the amendment because his defense "was in the nature of an alibi." (Cornwell's Br. at 15). However, Cornwell did not raise an alibi defense either before or during trial. He cannot now raise it for the first time on appeal. *See State v. Friedel*, 714 N.E.2d 1231, 1236 (Ind. Ct. App. 1999) (explaining that a party cannot raise an issue for the first time on appeal). Further, during argument on the State's motion to amend the charging information, Cornwell stated that the amendment "could have changed the defense." (Tr. Vol. 2 at 18). Cornwell's statement acknowledges that the State's amendment to the charging information did not change his defense and was not substantive.

myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[18] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Cornwell was convicted of murder. The sentencing range for murder is from forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years. I.C. § 35-50-2-3. The trial court sentenced Cornwell to fifty-five (55) years, which is the advisory sentence.

[19] With regard to the nature of the offense, Cornwell brutally murdered, without justification, a quiet housemate that often kept to himself. Specifically, Cornwell took Trahan to an abandoned area, where he beat and stabbed him. At one point, Cornwell stabbed Trahan so deeply that he cut through Trahan's throat and felt a bone. Cornwell then buried Trahan's body in a pile of mulch and attempted to burn evidence linking him to the murder.

[20] With regard to his character, we note that although Cornwell, who was eighteen years old when he killed Trahan, grew up in a stable and loving home where he received both financial and emotional support and had many opportunities and advantages, he chose to tell others that he had grown up "in a hard knock life kind of thing." (Tr. Vol 3 at 19). Further, Cornwell specifically turned away from his supportive family and chose to live a life that eventually included the commission of murder.

Based on the nature of the offense and his character, Cornwell has failed to persuade this Court that his fifty-five (55) year advisory sentence for murder is inappropriate.

Affirmed.

Riley, J., and Robb, J., concur.